## J. H. WOODMAN *vs.* CHARLES LANE.

In a conveyance of land by deed, a general description of the premises conveyed may be restricted and restrained by a particular description.

And in a writ of entry, a general description of the land demanded may be restricted and restrained in the same way.

THIS was a writ of entry, brought to recover a tract of land in Sandbornton, being part of a tract of land which Benjamin Steele conveyed to Robert Steele, by deed recorded in the register's office, lib. 46, folio 229.

The cause was tried upon the general issue, at January term, 1834, when it appeared in evidence that on the 19th February, 1827, Robert Steele by deed conveyed to the demandant, in fee and in mortgage, a tract of land described in the deed as follows : " *My homestead farm in Sandborn-* '*ton, and is the same land which was conveyed to me by the* ' *deeds of one George Whittier and the deed of one Reuben* ' *Whittier ; one of said deeds from George is dated Octo-* '*ber 30, 1815, containing about twenty acres, recorded lib.* ' *111, fol. 594 ; the other of said George's deeds is dated* ' *June 12, 1810, recorded lib. 78, folio 859, containing thirty* ' *acres.    The deed from said Reuben is dated 25th Decem-* '*ber, 1815, recorded lib. 111, fol. 593, containing about* ' *seventeen and a half acres—all in lot No. 24, in the sec-* '*ond division of lots in Sandbornton.    For a more particu-* ' *lar description reference may be had to said deeds ; and the* ' *same is my homestead farm.*"

The said deed of mortgage was duly acknowledged and recorded, on the 23d February, 1827.

It further appeared, that the Whittiers conveyed to Robert Steele three tracts of land by deeds which are truly described in said deed of mortgage.

On the 21st August, 1804, Benjamin Steele being seized of a tract of land, of which the demanded premises are

part, and which lies adjoining the said three tracts of land conveyed by the Whittiers to Robert Steele, conveyed the same tract to Robert Steele.

Soon after the said Robert became seized of the said three tracts of land, he went upon the same, and there resided about fifteen years, removed the fence between those tracts and the land conveyed to him as aforesaid by Benjamin Steele, and occupied the four parcels together as one farm, and was so occupying them when he made the conveyance to the demandant.

On the 10th July, 1830, the demandant sued out a writ of entry against the said Robert Steele, in which he demanded seizin of *" a certain tract or tracts of land in Sand-*
*' bornton, and is the same which was the homestead farm*
*' of the said Robert on the 19th February, 1827, and was*
*' conveyed to said Robert by deeds* [here the deeds of the Whittiers were described as in the deed from Robert Steele to the demandant] *all in the second division in said Sand-*
*' bornton, reference to said deeds to be had for a more par-*
*' ticular description ; and is the whole of the farm which*
*' was, on the 19th February, 1827, the homestead farm of*
*' the said Robert, however butted, bounded or described."*

The demandant counted in that writ upon the deed of mortage, and at August term, in this county, 1830, had judgment for the demanded premises, and a writ of seizin was executed on the 25th October, in the same year ; and the premises recovered leased to John Steele on the same day, with the assent of the said Robert. And on the 10th May, 1831, the same premises were again demised by the demandant to John Steele, by a lease to which Robert Steele was a party.

On the 13th April, 1832, the said Robert Steele conveyed the demanded premises to the tenant and one **H. K.** Blake.

A verdict was taken, by consent, for the demandant, subject to the opinion of this court upon the foregoing case.

*C. W. Woodman,* for the demandant.   The first question

in the case is—Did the demanded premises pass by the mortgage deed?

It is well established, that it is sufficient if the general words of a grant have convenient certainty, as of a manor, farm, &c. *Cro. J.* 34, *Mason* vs. *Chambers ;* 2 *Co. R.* 32, *Doddington's case ;* 3 *Coke R.* 9, *Dowtie's case ;* 6 *Co. R.* 67 ; *Bacon's Ab.* " *Grant*" *H ;* 2 *Roll. Ab.* 45.

In this case, the words of the deed to the demandant, " *my homestead farm in Sandbornton,*" are words of sufficient certainty ; and as the case finds that the homestead farm included the demanded premises, the verdict must stand, unless the general words are restricted by the particular description which follows.

We contend, that the particular description is a mere explanation of part of the farm granted, and not a limitation of the general words of the deed.

But here we are met by the case of *Barnard* vs. *Martin,* 5 *N. H. R.* 536. It is, however, thought, with deference to the court, that upon a further examination of the adjudged cases bearing upon the point, the court may be warranted in overruling that case.

We consider it as settled,

I. That when a sufficient certainty once appears, a misrecital, or false statement, subsequent, shall not impair or affect the grant.

II. That when the general words and the particular description are all but one and the same sentence, then the particular description is to be construed as a limitation of the general words ; but when they are distinct and separate sentences, the particular description is to be construed, not as a restriction, but an explanation of the general terms.

To sustain these propositions we rely upon the following authorities : *Cro. Car.* 548 ; *Plowden,* 191—195 ; 4 *Co. R.* 34, *Bozoun's case ; Moor,* 45 ; *Cro. J.* 34, *Mason* vs. *Chambers ; Cro. Eliz.* 113, *Boocher* vs. *Samford ; Dyer,* 506 ; 2 *Burrows,* 1089, *Paul* vs. *Paul ;* 3 *Pick. R.* 278 ;

15 *John.* 471, *Jackson* vs. *Barringer ;* 1 *Caine's R.* 493, *Jackson* vs. *Defendorf ;* 7 *John.* 217, *Jackson* vs. *Clark ;* 4 *Mass. R.* 205, *Worthington* vs. *Hylyer ;* 3 *Greenleaf* 71, *Cate* vs. *Thayer, and ib.* 393, *Keith* vs. *Reynolds ;* 4 *Greenleaf* 14, *Willard* vs. *Moulton ; and ib.* 471, *Child* vs. *Ficket ;* 7 *Greenleaf,* 366, *Drinkwater* vs. *Sawyer ;* 5 *East,* 81 ; 5 *N. H. R.* 58 ; 1 *M. & S.* 299 ; 6 *Cranch* 237.

In this case, the general description in the deed being clear and certain, the particular description must be considered as erroneous, and cannot restrict the general description.

And the general words and the particular description are in this case distinct and separate sentences ; and the particular description is to be construed only as explanatory, and not as a restriction.

But the demandant, as against this tenant, may rest his case upon the judgment recovered against Robert Steele for the whole homestead farm, however butted, bounded or described, before the demanded premises were conveyed to the tenant and Little.

*I. Bartlett,* for the tenant.

Richardson, C. J., delivered the opinion of the court.

The first question to be decided in this case, is, whether the deed of mortgage conveyed to the demandant the premises he claims to recover in this suit.

The deed purports to convey to the demandant the homestead farm, which is stated to be the land conveyed to the grantor by three deeds, which are particularly described ; and the land described in the three deeds is stated to be all in lot No. 24 ; a reference is made to the three deeds for a particular description of it, and the same is declared to be the homestead farm.

It is rather difficult to conceive how this description can be construed to embrace the demanded premises, if the apparent intent of the parties to the deed is to govern in the

construction.    The Whittier deeds are so minutely describ-
ed, the dates, the quantity of land they convey, the books
and pages where they are recorded, it is manifest they were
present when this conveyance was made.    And if this de-
mandant exercised ordinary care in the business, he did not
take the conveyance without a careful examination of those
deeds ; and having taken a deed which expressly declares
that the land described in those deeds constitutes the home-
stead, he would seem to have precluded himself from saying
that the homestead embraced any thing more, or even that
the land demanded in this writ was omitted by mistake.

The term *"homestead"* by no means necessarily implies
the four parcels of land which the grantor owned, although
they lay and were occupied together.    A homestead is the
place of the house.    Coke says, "Stethe, or sted, betoken-
eth properly a bank of a river, and many times a place."
*Co. Lit.* 4 *b.*    Homestead, then, means nothing more than
home place.

It appears, from what is stated in this case, that the house
stands on the lands bought of the Whittiers ; and it is much
more probable that those lands were known and considered
as the home place, than that the demanded premises were
omitted in the particular description by mistake.

In the case of *Barnard* vs. *Martin,* 5 *N. H. R.,* 536, the
very point we are now considering was examined and set-
tled.    It was there decided that the terms, *"homestead
farm,"* might be restricted by a particular description.    But
it is said that the authorities do not sustain that decision ;
and as that is by no means so clear a case as the one we
have under consideration, we shall reëxamine that case.

It is contended, that the terms, *homestead farm,* so clearly
and certainly indicate what was intended to be conveyed,
that they cannot be restricted by a particular description ;
and that the general description is to be considered as a dis-
tinct and separate sentence from the particular description ;
and that the latter is therefore to be construed as explanatory

and not as restrictive. And it is said these propositions are sustainable upon authority.

We shall now examine the cases cited.

In the case, *Conolly* vs. *Vernon*, 5 *East*, 51, one having customary tenements, compounded and uncompounded, surrendered to the use of his will, all and singular, the lands and tenements, &c. whatsoever in the manor which he held of the lord, by copy of court roll, in whose tenure or occupation soever the same were, *being of the yearly rent of £4 10s. 8½d., and compounded for.* The question was, whether the words, *and compounded for*, restrained the operation of the surrender. It was decided that when there is a grant of a particular thing once sufficiently ascertained, the addition of an allegation, mistaken or false, will not frustrate the grant; but where a grant is in general terms, then the addition of a particular circumstance will operate by way of restriction, and that in that case the words, *being of the yearly rent, &c., and compounded for*, were part of the general sentence; that there was no division in the words or sense, but the whole was one entire sentence, and that one part might well restrain the other : page 81. That case has no tendency to establish either of the propositions laid down by the counsel in this case. No question as to the meaning of the term, *homestead farm*, arose, or was considered. On the contrary, it is a direct authority to show that the general and particular description in the case of Barnard *vs.* Martin were one entire sentence, and that one might restrain the other.

In *Radford* vs. *Southern*, 1 *M. & S.* 299, there was the following devise in the will of R. S. "I give and devise *all* that my farm, lands and hereditaments called Trogues Farm, within the parish of Darley, in the county of Derby, *now in the occupation of A. Clay.*" It appeared that part of the Trogues farm was not in the occupation of A. Clay. The question was, whether that part passed by the devise. The court rested the decision entirely on the force of the

word *all* in the devise, which they considered as indicating clearly an intention to pass all that was called Trogues farm ; and which was not, therefore, in their opinion, to be limited by the defective description of the occupation. They therefore held that all passed. It is very manifest that the decision in that case, resting as it does entirely upon the force of the word *all*, has no bearing upon the question which arose in Barnard *vs.* Martin, or which arises in the case now before us.

In *Lodge's lessee* vs. *Lee,* 6 *Cranch,* 237, there was a grant to Thomas Lee of " all that tract, or upper island of ' land called Eden, in Prince George county, beginning at a ' bounded maple, &c., and running thence N. 60° W. sixty ' perches," &c. (giving the course and distance of every line to the beginning tree.) The lines described in the grant did not embrace the whole island ; but it was decided that the whole island passed. The reasons of the decision are not stated, but they are very apparent. An island has certain natural boundaries, which cannot be mistaken, and which, when the whole island is granted, cannot be controlled by length of chain and point of compass, which are much less certain.

In *Child* vs. *Ficket,* 4 *Green.* 471, the case was this : Brooks being seized of three tracts of land in Portland, which had been conveyed to him by J. W. by deed dated April 9, 1807, and which were particularly described in that deed, on the 24th December, 1810, made a deed, by which he conveyed to James Wylie, Junior, " three parcels, or lots of land, situated in Portland, the first parcel bounded," &c. (*here he described the first parcel, as it was described in J. W.'s deed to him*) " being the same which was conveyed to me by J. W. by deed dated April 9, 1807, now on record."

It was very correctly decided, that the particular description of the first parcel could not, under the circumstances, restrict the conveyance to that parcel, but that all the parcels must be considered as intended to be conveyed.

In *Willard* vs. *Moulton*, 4 *Green.* 14, Abner Hill owning a farm, one third undivided of which had been conveyed to him by Joseph Hill, in a deed dated May 14, 1811, and the remaining two thirds by a deed dated March 26, 1813, on 27th November, 1821, conveyed to Moulton certain parcels of land; "also, one other parcel, &c., particularly described 'and mentioned in a deed from Joseph Hill to me, dated May '14, 1811, said parcels of land being all the farm on which 'I now live." The question was, whether this deed passed to Moulton one undivided third, or the whole of the last parcel mentioned in it. The court were of opinion that the reference to the deed of May 14, 1811, was for the purpose of describing the land, and not the quantity of estate intended to be conveyed; and as he had declared what he conveyed to be all the farm on which he lived, the whole of the parcel in dispute passed.

In *Keith* vs. *Reynolds*, 3 *Green.* 393, B. N. conveyed by deed to the plaintiff "a certain tract of land, or farm, lying 'in Winslow, &c., which was granted by the proprietors, &c. 'to Ezekiel Pattee : Said farm is bounded as follows :" (Here the farm was described by courses and distances, which did not include the whole, but left out a small, triangular piece.)

The question was, whether the whole farm granted to Pattee passed by this deed. The court held that the land intended to be conveyed was designated by the reference to the grant to Pattee with sufficient certainty to control the courses and distances, and that the whole farm passed.

In *Cate* vs. *Thayer*, 3 *Greenleaf* 71, it was decided only that where land is described by certain known monuments, and also by the courses of the lines, the monuments are to prevail against the courses, when they come in conflict.

In *Jackson* vs. *Barringer*, 15 *John.* 471, R. Livingston leased to Barringer "the farm on which J. J. Decker now 'lives, lying east of the farm of J. Miller, west of the farm ' of A. Bartle and J. Decker, south of the farm of T. Becker, 'to contain eighty acres in one piece." The farm on which

J. J. Decker lived at the time the lease was made, contained one hundred and forty-nine acres; and the question was, whether the whole farm passed? The court decided that the description of the premises intended to be conveyed as the farm on which J. J. Decker lived, was certain enough to control the quantity stated, and that the whole farm passed.

The points decided in *Worthington* vs. *Hylyer*, 4 *Mass. R.* 196, were that when the description of an estate intended to be conveyed includes several particulars, all of which are necessary to ascertain the estate to be conveyed, no estate will pass except such as will agree to every particular of the description. But if the description be sufficient to ascertain the estate intended to be conveyed, although the estate will not agree to some of the particulars in the description, yet it shall pass.

The case of *Jackson* vs. *Clark*, 7 *John.* 217; *Bozoun's case*, 4 *Coke's R.* 34; the law stated in 3 *Pick. R.* 278, and 2 *Burrows*, 1093, and in *Moore* 45, are all to the same effect as the case of Worthington vs. Hylyer.

And the case of *Swyft* vs. *Eyres*, *Cro. Charles*, 546, in truth amounts to nothing more. In that case, the sub-chanter and vicars choral of Litchfield granted to Humphrey Peto "all that their glebe lands lying in Chesterton, viz. 78 'acres of land, and also the demesnes of the said 78 acres, 'with all profits, commodities, tythes personal and predial, 'whatsoever they be, or shall fortune to be, belonging to 'said sub-chanter and vicars, as parson and proprietaries of 'the parish church of Chesterton aforesaid, as the tythes of 'pig, goose, &c., and all other tythes whatsoever; and also 'the tythes of the said 78 acres: all which lately were in 'the occupation of Margaret Peto." It was found that the tythes of these lands never were in the tenure of Margaret Peto. But some lands and tythes were in the tenure of Margaret Peto. The question was, whether any tythes not in the tenure of Margaret Peto passed by that grant?

It was decided, that the tythes passed, although not in

her tenure : and it was said that " where the clause is not in 'one entire sentence, but distinct and disjoined from the 'other, as here it is, there cannot be any restriction ; also 'this being in the case of a common person addition of a 'false thing, viz. false possession, shall never hurt the grant : 'for the addition of a falsity shall never hurt, where there 'is any manner of certainty before." The amount of this seems to be, that when what is intended to be granted appears with any manner of certainty, the addition of a falsity does not hurt.

The case of *Drinkwater* vs. *Sawyer*, 7 *Greenleaf*, 366, only decides that where the land intended to be granted is once clearly ascertained by the description, the addition of a mistaken circumstance will not affect the grant.

We have now examined all the most material cases which have been cited by counsel to show that the decision in Barnard *vs.* Martin cannot be sustained upon authority. Few cases have been now cited which were not examined when we had that case under consideration. But it was supposed that the cases mentioned in the opinion of the court in that case were all that had any bearing upon the question to be settled. And after a most careful examination of all the cases which have been cited in this, we are of opinion that there is no one which, when rightly understood, is at all in conflict with the decision in that case ; and that very few of them have any bearing upon the question.

We are, therefore, of opinion that the land sought to be recovered in this case did not pass to the demandant by the deed of mortgage.

The next question is, whether the tenant is estopped by the judgment to claim the demanded premises ?

This question is easily settled. If in that suit the only description of the premises demanded had been, " *the whole* ' *of the farm which was on the* 19*th February*, 1827, *the* ' *homestead farm of the said Robert, however butted, bound-* ' *ed or described*", the deed on which the demandant counted

in that case would have shown conclusively that the land demanded in this case was not the land demanded in that. But there was a further description in that writ, which shows clearly that this land was not demanded in that suit.

*Verdict set aside, and a new trial granted.*