## Rundlett *vs.* Dole & Trustee.

A schedule, containing a detailed specification of the property transferred, is not necessary to the validity of an assignment for the benefit of creditors.

Where general words are followed by a special clause, the latter may restrain and limit their operation. Thus, where a debtor assigned " all and all manner of goods, chattels, debts, demands, monies, and other things of him, the said D., whatsoever, as well real as personal, of what kind, or nature, or quality soever, in the schedule hereunto annexed, and particularly mentioned and expressed"—*Held*, that the latter words were restrictive, and that nothing would pass by the assignment, unless it was specified in the schedule.

The oath of a debtor, appended to an assignment, that he had placed, and assigned, and that the true intent of the assignment was to place, in the hands of the assignee, all his property of every description, except such as is exempt from attachment, cannot enlarge its operation. The oath is required to prevent fraud, but is not part of the assignment, nor operative as a grant.

*It seems*, where an assignment is made of personal property, for the benefit of creditors, and at the same time real estate is conveyed to the trustee, by a deed absolute on its face, but intended also for the benefit of the creditors ; that the whole assignment is void, as against creditors who attach the property, or summon the trustee in a process of foreign attachment.

A mortgage executed by a debtor, on the same day on which he made an assignment, does not necessarily render the assignment invalid ; but it is a circumstance to excite suspicion ; and if it was part of the same transaction, and resorted to in order to secure a preference to the mortgagee, it will defeat the assignment.

A provision that the trustee shall execute the trust in a certain time, if the period is reasonable, will not vitiate an assignment.

FOREIGN ATTACHMENT. From the disclosure of Gordon, the trustee, it appeared that on the 29th day of June, 1837, Dole, the principal debtor, executed an indenture, whereby he granted, assigned, bargained and sold to the trustee " all and all manner of goods, chattels, debts, demands, monies, and all other things of him, the said Dole, whatsoever, as well real as personal, of what kind, or nature, or quality soever, in the schedule hereunto annexed, and particularly mentioned and expressed"—To have and to hold the same, and every part and parcel thereof, upon trust, within two years from the date, to sell and dispose of the goods and

chattels to the best advantage; and collect and convert into money the debts and demands; and out of the money thus raised, or received, to pay, 1. The charges and expenses. 2. The several just creditors of said Dole, the several debts and sums of money due and owing to them respectively, in proportion to the amount of their respective debts, by an equal rate per cent., without any preference. 3. The overplus, if any, to the said Dole, his executors, administrators or assigns.

The indenture constituted the trustee, his executors and administrators, attornies, to collect the debts and demands assigned, and to perform all such other acts relating to the premises as he or they should think needful. And the debtor made oath, on the 29th of June, that he had placed, and assigned, and the true intent of the assignment was, to place in the hands of the assignee all his property of every description, except such as is exempt from attachment and execution by an act for the relief of poor debtors, passed January 3, 1829; to be divided among his several creditors in proportion to their respective demands.

It appeared further, from the disclosure, that a schedule was annexed to the assignment, which the trustee stated contained a description of all the property belonging to Dole of which he had any knowledge. This schedule was not annexed to the indenture at the time of its delivery, but was made up from time to time, as a description of the property could be obtained, and was handed to the trustee about a week after the date of the indenture.

Some articles were forgotten by the assignor, and inserted afterwards; but the schedule was completed more than six months before the service of the plaintiff's writ. The trustee annexed it, but he could not state whether it was annexed before or after the service of the writ. He took possession of portions of the property on the 30th of June, and of other portions as fast as it could be inserted in the schedule and delivered over to him.

The trustee further stated in his disclosure, that at the time of the assignment Dole conveyed several pieces of land to him, by a deed apparently absolute—that these lands were intended expressly for the benefit of the creditors, but were not described or referred to in the schedule—and that, in the forenoon of the same day on which the assignment was made, Dole executed a mortgage of a horse, which was not mentioned in the schedule. The assignment was executed in the afternoon.

The trustee also stated, that he understood two minor children of Dole, at the time of the assignment, held some real estate as heirs to their mother, who was dead; which she inherited from her father; but whether Dole had any interest in it he could not say.

The avails received by the trustee amounted to about $1850. At the time of the assignment Dole owed him about $200.

*Wilkins & Farley*, for the plaintiff. The assignment is inoperative and void as against creditors.

1. The time in which the trustee was to execute and complete his trust is fixed and limited.

2. Dole did not assign all his real, mixed and personal estate, to be distributed among his several creditors, as the assignment refers to a schedule, for the enumeration and description, when in truth no such schedule was made or in existence.

3. At the time he took the oath, no property whatever had been put into the possession, or was under the control of the assignee; or in any way described, specified or enumerated.

4. At the time of the assignment he conveyed to Gordon real estate to a large amount, in fee, absolutely and unconditionally, and not in trust for his creditors.

5. He at that time was seized, as tenant by the curtesy, of certain real estate, of which his children were the reversioners, which is not included; and on the same day the as-

signment was made, he executed a certain mortgage of personal property, which is not enumerated, or alluded to, in the assignment or schedule.

6. It does not appear that any schedule was annexed to the assignment before the plaintiff's writ was served on the trustee.

*J. U. Parker*, for the trustee, cited 8 *Pick. R.* 63, *Emerson* vs. *Knower ;* 4 *Mason's R.* 206, *Halsey* vs. *Fairbanks &* *Trustee ; Angell on Assignments* 66 ; 10 *Pick. R.* 410, *Russell* vs. *Woodward.*

PARKER, C. J. The general question in this case is, whether the assignment is valid under the act of July 5, 1834, for the equal distribution of property assigned for the benefit of creditors. That statute enacts that no assignment, made for the benefit of creditors of any debtor so assigning his property, shall be valid in law, except the same shall provide for an equal distribution of all real, mixed or personal estate, among the several creditors of the person or persons making such assignment, in equal proportion, according to their respective claims.

It is objected to this assignment, that it does not purport to be a transfer of all the debtor's property, but only of such part of his property as is enumerated in the schedule annexed to the assignment—that it appears, affirmatively, that all the property of the debtor was not mentioned in the schedule— that no schedule was annexed to the assignment at the time when it was executed, and for a long time after—and that it does not in fact appear that the schedule was annexed until after the service of this process.

It is apparent that the schedule was not annexed until some time after the deed of assignment was executed and delivered, and that it does not mention all the property of the debtor ; but the counsel for the trustee contends that no

schedule was necessary in order to pass the property, and that it is immaterial whether any schedule was annexed ; or, if one was so annexed, whether it in fact contained a complete specification of all the property of the debtor or not.

It is true that a schedule, detailing at large the property conveyed, is not necessary to the validity of an assignment for the benefit of creditors. It is sufficient to constitute a legal transfer, that there is reasonable certainty, in the description, of the things intended to be conveyed (4 *Mason* 219, *Halsey* vs. *Fairbanks ;*) and if the conveyance be, in the words of the statute, of all the real, mixed and personal estate of the debtor, except what is exempted from attachment and execution by the act of January 3, 1829, the maxim, *id certum est, quod certum reddi potest*, will well apply, and the conveyance be good.

A devise of all the real and personal estate of the testator is a valid conveyance. So of a deed of all his estate ; and an assignment is but a deed, conveying the estate in trust, in order that the avails may be appropriated to the payment of creditors.

But although a schedule is not, in general, essential to the validity of an assignment, the parties to this assignment have made one necessary, in this case, by the phraseology adopted in the instrument itself. The debtor grants, bargains and sells "all and all manner of goods, chattels, debts, demands, monies, and other things of him, the said Dole, whatsoever, as well real as personal, of what kind, or nature, or quality soever, in the schedule hereunto annexed, and particularly mentioned and expressed." These latter words are restrictive, and nothing could pass by the assignment, unless it was enumerated in the schedule. The case, *Wilkes* vs. *Ferris, 5 Johns. R.* 336, is directly in point.

Various illustrations of the principle, that where general words are followed by a special clause, the latter may restrain what goes before, are found in the books. 7 *N. H. Rep.* 241, *Woodman* vs. *Lane ;* 5 *Ditto* 536, *Barnard* vs. *Martin.*

In this respect this case differs from those cited in the argument for the trustee, where it was held that the property passed, and was intended to pass, before any schedule should be taken.

An assignment of all the debtor's property may provide that a schedule shall be taken and annexed, notwithstanding the assignment passes a present interest, and is operative without any schedule ; the provision for a schedule being intended merely for the convenience of the parties, and to furnish evidence of the particular property embraced within the general terms of the deed. 2 *Paige's Ch. R.* 311, *Keyes* vs. *Brush.* But in this case no interest passed to the assignee in any thing, until the schedule was prepared and annexed, for the conveyance is of what is specified in the schedule, and restrained to that.

And the oath of the debtor, appended to the assignment, that he had placed, and assigned, and that the true intent of the assignment was to place in the hands of the assignee all his property, of every description, except such as is exempt from attachment, cannot alter the case. This is made in compliance with the same statute, which requires such oath to be made in order to the validity of an assignment ; but it was not intended to be of itself a conveyance of any thing, and cannot operate in aid of the grant. It is required to prevent fraud, but contains no words of grant, or conveyance, and is in no sense a part of the assignment, although it is endorsed on it.

As nothing passed by the indenture except what was described in the schedule, and as that, with the deed of the real estate executed at the same time, did not contain all the property of Dole, the assignor, the assignment is void under the act of July 5, 1834. Whether the horse was mortgaged for his full value or not, does not appear ; but if he was, the mortgage did not extinguish the debt ; the mortgagee would be entitled to a share of the property assigned, and the right of redemption, under such circumstances, might be of con-

siderable value. He seems also to have had title as tenant by the curtesy to certain real estate which was not conveyed or assigned.

The assignment being invalid, for these reasons, it is not necessary for the settlement of this cause to go farther. But we are inclined to the opinion that the objection that certain real estate was conveyed by absolute deed, would also be fatal to the validity of the transaction. The trustee swears, and such is doubtless the fact, that it was intended to be held by him in trust, and that the avails of the property therein conveyed were to be distributed with the rest ; but no such trust is expressed on the face of the deeds ; and the trust being a secret one, we see not why the land might not have been attached and holden by the creditors. If it might have been, the debtor had not in fact made a valid conveyance of this real estate for the benefit of all his creditors ; for where such a conveyance is made, no creditor who dissents can attach and take the property from the rest. If the debtor has duly conveyed all his property, for the benefit of all his creditors, according to the provisions of the statute, they are of course entitled to hold the avails of it.

Besides, it has been urged, with great force, that such conveyance of part of the property, without any trust apparent on the face of the conveyance, is against the policy of the law, and has a tendency to promote fraud. The creditors may have no knowledge whether the conveyance is in truth absolute, or on trust, and no direct remedy to enforce a trust, until they have proved it by evidence *aliunde*, and they may thus be delayed and hindered in the collection of their demands.

The mere fact that a mortgage was executed by the debtor on the same day, before the indenture of assignment was made, would not of itself render the assignment invalid. There is nothing in the act of 1834 to prevent a party from giving a preference to any creditor, by a direct pledge or mortgage of property, distinct and separate from an assign-

Rundlett *v.* Dole & Trustee.

ment. We have in more than one instance held such transactions valid since the passage of that statute.

If a party, having in good faith executed a mortgage, without any view of avoiding the provisions of the act, afterwards executes an assignment on a subsequent day, the latter will not be affected by the former. And the fact that it was executed on the same day will not of itself render the assignment invalid, although it may be a strong circumstance to excite suspicion. If it appeared that the mortgage was intended as part of the same transaction, and was resorted to in order to secure a preference to the mortgagee, and in that way avoid the operation of the statute, it would defeat the assignment. From the facts stated in the disclosure, it is not perhaps perfectly clear whether the mortgage was, or was not, intended to confer a preference, in advance of the assignment ; nor is it material now that that fact should be settled.

The provision that the trustee shall execute the trust within the term of two years, does not appear to us to vitiate the transaction. The time does not seem to be unreasonable, and the provision was probably intended to secure a benefit to the creditors, instead of delaying or hindering them. Had the time been such as to evince a contrary intention, the argument might have been valid.

*Trustee charged.*