<div style="text-align:right">NEW-YORK,<br>Nov. 1810.<br><br>JACKSON<br>v.<br>CLARK.</div>

---

JACKSON, *ex dem.* ROGERS and GARDINIER, · *against* CLARK and another.

THIS was an action of ejectment, and was tried at the *Saratoga* circuit, in 1810, before Mr. Justice *Van Ness.*

<div style="float:right;width:35%">If in the description of an estate in a deed, there are particulars</div>

sufficiently ascertained to designate the thing intended to be granted, the addition of circumstances false or mistaken will not frustrate the deed. But where the description of the estate intended to be conveyed includes several particulars, all of which are necessary to ascertain the estate to be conveyed, no estate will pass, except such as will agree with every particular of the description.

Where the description of the premises in a deed were, all, &c. "lot No. 1. of the smaller lots into which lot No. 3. of the subdivision of lot No. 10. in the 12th general allotment of the patent *K.*" &c. and there was a mistake in inserting the 12th instead of 21st general allotment, it was held, that the premises which were claimed to be in the 21st general allotment, passed by the deed; and if the words " with the dwelling-house thereon," be inserted in the description, when, in fact, there was no dwelling-house on the premises claimed under the deed, it is merely a *false* circumstance which does not control the rest of the description, nor defeat the grant.

The *notice* of a sale of mortgaged premises, pursuant to a power under the statute, may be postponed to a further day, provided notice of such postponement be also inserted in the gazette, and put up on the court-house door; and *it seems*, it is not necessary to give a further notice of *six* months, of such postponement.

But where a notice of a sale was given in *February*, to take place on the 12th *August* following, which was duly published, and in *June* a notice was inserted in th gazette, that the sale was postponed to the 3d of *September*, which notice of the postponem nt was not put up at the court-house door, and the sale took place on the 12th *August*, pursuant to the original notice; it was held, that the sale was irregular and void.

The plaintiff claimed title to lot No. 1. of the subdi-vision of lot No. 3. in the division of great lot No. 10. in the 21st allotment of the patent of *Kayaderosse-ras*, containing 155 acres, situate in the town of *Provi-dence*, in the county of *Saratoga*.

At the trial, the plaintiff produced a mortgage in fee, from *William Clark* to *Rogers*, one of the lessors, dated the 4th *September*, 1797, to secure the payment of 50 dollars, on or before the 1st *September*, 1801. The mortgaged premises were described as being known and distinguished by " lot No. 1. of the smaller lots into which lot No. 3. of the subdivision of lot No. 10. in the 12th general allotment of the patent of *Kayaderosseras* is subdivided, beginning at a hemlock tree, marked No. 2. and 3. being the north-west corner of lot No. 2. of the said subdivision, and standing on the easterly bound of lot No. 9. of the said allotment," &c. giving the other courses and distances, mentioning " a stake and heap of stones," the south-west corner of lot No. 4. of the smaller lots, as a monument, and " a stake and heap of stones, being the north-west corner of lot. No. 2. of the said smaller lots," as another monument or bounda-ry, containing 155 acres, with a dwelling-house thereon.

The mortgage contained the usual power of sale, and was duly acknowledged and registered. The sale of the mortgaged premises, under the power, was advertised in the *Albany Gazette*, for six months, which expired the 7th *August*, 1806. The advertisement was dated the 17th *February*, 1806. A postponement was made of the time of sale; and the following notice was subjoined and continued with the advertisement until the 7th *August*, 1806, when both were discontinued: " Note, the sale of the above property is postponed to *Wednesday*, the 3d *September* next. *June* 16, 1806. *James Rogers*." A sale was made of the premises, pursuant to the ad-vertisement and notice, on the 12th *August*, and *Gar-dinier*, the other lessor, became the purchaser. The

first advertisement was regularly put up at the court-
house door of the county, during six months, but the no-
tice of the postponement and continuance were not affix-
ed there.

The plaintiff gave in evidence a deed from the mort-
gagee to *Gardinier*, the other lessor, dated the 16th
*January*, 1809, for the consideration of 103 dollars,
which recited the mortgage, advertisement and sale.

A witness testified, that the boundaries expressed in
the mortgage comprehended the lot No. 1. but that the
12th allotment of *Kayaderosseras* patent lies in the county
of *Montgomery*, and that there were no buildings on the
premises in 1797. The scrivener who drew the deed,
testified, that he inserted the words " with the dwelling
thereon," without knowing whether there was a house
on the premises or not. The defendants were proved to
be in the possession of the premises. The counsel for
the defendants moved for a nonsuit, on the ground that
the directions of the act concerning mortgages, had not
been pursued in the advertisement and sale of the pre-
mises; but the motion was overruled.

. The defendants proved, that on the 29th *April*, 1797,
the premises in question were conveyed in fee, by *Jona-
than Hagadum* to *Rogers*, the lessor, and that *Rogers*,
on the 4th *September*, 1797, conveyed the premises in
fee to *William Clark*, who died intestate, about the
1st *March*, 1798. Administration was granted by the
surrogate of *Saratoga*, on the estate of *Clark* to *John
Taylor;* and on the 13th *October*, 1800, an order was
made by the surrogate for the sale of all the real estate
of *Clark* in the county of *Saratoga;* and a deed from the
administrator to *Nathan Harman*, on a sale, pursuant to
this order, dated the 6th *December*, 1800, was produced.
*Harman* conveyed the premises by deed, dated 1st *Fe-
bruary*, 1801, to *Elijah Olmstead*, who, on the 1st *April*,
1802, conveyed them to *John Taylor*, who, on the 19th

*October*, 1805, conveyed the same premises to the defendants.

A witness testified that there was a lot No. 10. in the 12th allotment of *Kayaderosseras* patent, containing 100 acres, but that it had never been subdivided.

Payment of the mortgage to *Rogers*, had been demanded of the administrator of *Clark*, (without showing the mortgage,) previous to the advertisement and sale; but the administrator refused payment, alleging that the mortgage did not cover the premises in question.

A verdict was taken for the plaintiff, subject to the opinion of the court, on a case containing the above facts, with liberty to either party to turn the same into a special verdict.

*Van Vechten*, for the plaintiff. The plaintiff may claim either under the mortgagee, or under the purchaser at the sale made by virtue of the power contained in the mortgage. The defendants claim to hold under the mortgagor. The premises are described as in the 12th allotment, but in fact are in the 21st allotment. It is a cardinal rule in the construction of deeds, that they are to be so construed, if possible, that the deed may take effect, according to the intent of the parties. If the designation of the allotment is incompatible with the rest of the description, it ought to be rejected, when there is sufficient to ascertain the land intended to be conveyed. There was a lot No. 10. in the 12th allotment, but it never had been subdivided, so that it could not comprise a lot No. 1. in lot No. 3. of the subdivision of lot No. 10. The description by courses and bounds is clear and precise; and there are fixed monuments, as stakes and heaps of stones, to mark the situation. It is proved that there was not, in fact, any house on the premises intended to be conveyed; and the mortgage was executed on the same day the premises were conveyed

to the mortgagor. Shall he or the persons claiming under him be allowed to make such an objection?

The rule on this subject is well laid down in the case of *Worthington and others* v. *Hylyer and others*, (4 *Tyng's Mass. Rep.* 196.) in the supreme court of *Massachusetts*, which is very analogous to the present case. The court said "if the description be sufficient to ascertain the estate intended to be conveyed, although the estate will not agree to some of the description, yet it shall pass by the conveyance, that the intent of the parties may be effected." Here lot No. 1. in lot No. 3. of the subdivision of lot No. 10. corresponding with the courses and distances and fixed monuments, are sufficiently certain, though the number of the allotment is wrong.

Any trifling inaccuracy in the description of the premises will not invalidate the notice. There would have been no mistake in this case as to the sale. The administrator had notice of the mortgage, for it was recorded; and it was proved that actual notice of the mortgage was given to him.

*Taylor*, contra. The description of the estate should be so certain, that by the terms of it the premises may be designated. The situation of the premises is material. Here no *town* or *county* is mentioned, which would be decisive of the situation. The number of the allotment, then, is the controlling circumstance in this description. There may be lots of the same numbers, containing the same quantity of acres, with similar courses and distances in the 12th and 21st allotments.

There is no ambiguity on the face of the deed, and it is not to be explained by parol evidence.* If a man grant his manor of *Dale* in *Dale*, and part of the manor extends into *Sale*, no part lying in *Sale* will pass by the deed.† Neither the number of acres nor the boundaries, or courses and distances, form a controlling circum-

NEW-YORK,
Nov. 1810.

JACKSON
v
CLARK.

* 2 *W. Bl. Rep.* 1249. *Gilb. Law of Ev.* 312.

† *Shep. Touch.* 98, 99.

stance.   If a man grant all his land in *A.*, all the land in *A.* will pass, be it more or less, and however incorrectly the boundaries may be stated.

If the premises are to be considered in the 21st allotment, the description of them in the mortgage will not be notice to a purchaser who examines the record.   A purchaser would look to the number of the lot, and the allotment, not to the particular bounds or courses and distances.   But what evidence is there that the premises were in the 21st allotment?   Mere similarity of description does not make it the same; nor is it made out by the correspondence of the date with that of the deed from *Rogers.*

Again, a dwelling-house is mentioned as parcel of the premises; and it is proved that there was no dwelling-house on the premises until 1805.   The description in the deed from *Rogers* does not correspond exactly with the description in the mortgage.   A description should be so far exact, as that according to the literal meaning of the terms, the premises in question may be included.

Again, the action of ejectment is to try the title of the lessor of the plaintiff; and if demises are laid from several lessors, and the titles of the several lessors are incompatible with each other, the plaintiff ought to be held to the title relied on at the trial.   The plaintiff relied on the demise of *Gardinier;* and if a title is shown in him, there can be none in *Rogers;* for the two are irreconcilable with each other.   Having expressly claimed to recover on the demise of *Gardinier*, the plaintiff is excluded from setting up a claim under the demise of *Rogers.*

Again, the deed from *Rogers* recited the mortgage, advertisement and sale; he is, therefore, bound by that recital, and cannot allege that the title was different.*

* 1 *Salk.* 286.

Then, as to the claim under *Gardinier.*   The plaintiff has not shown sufficient to entitle him to a recovery on this demise.   There was no notice of the time of the ac-

tual sale, put up at the door of the court-house in the
county, as is required by the statute. The only notice
put up was of a sale to take place on the 12th *August.*
Besides, six months' notice of the actual sale was not
published in the gazette. In *June,* the sale was put off
from the 12th *August* to the 3d *September;* and there
should have been a new notice. The first given in *February,* of a sale in *August,* expired the 7th *August,* and
was not continued afterwards; and the sale was actually
made the 12th *August,* after the entire discontinuance of
the original advertisement and notice.

Again, it does not appear that the power to sell was
recorded, pursuant to the statute, before the sale was
made, and the conveyance executed.

The postponement of the sale was also made without
the consent of the defendant, and did not specify the
place or hour of sale. I contend that where a sale is
postponed, there must be *six* months' notice of such postponement.

SPENCER, J. delivered the opinion of the court.
The rules which govern the construction of grants have
been settled with the greatest wisdom and accuracy.
The following principles will govern the construction of
this deed. Such construction is to be given as will give
effect to the intention of the parties, if the words
they employ will admit of it; *ut res magis valeat quam
pereat.* If there are certain particulars once sufficiently
ascertained, which designate the thing intended to be
granted, the addition of a circumstance, false or mistaken, will not frustrate the grant; as in *Blague* v. *Gould,*
(*Cro. Car.* 447. 473.) there was a devise of a house, called
the corner house in *Andover,* in the tenure of *B.* and *H.,*
whereas it was in the tenure of *B.* and *N.,* the devisor
having a house thereto near adjoining in the tenure of
*H.* and it was held, that the corner house in the tenure
of *B.* and *N.* passed, for that the devise sufficiently as-

NEW-YORK,
Nov. 1810.

JACKSON
v.
CLARK.

certained the thing, by the words " corner house;" and
the addition of the tenure was surplusage. But when
the description of the estate intended to be conveyed
includes several particulars, all of which are necessary
to ascertain the estate to be conveyed, no estate will
pass, except such as will agree to every description.
(4 *Tyng's Mass. Rep.* 205. 3 *Atk.* 9. *Dyer*, 50.) Thus,
if a man grant all his estate in his own occupation in
the town of *W.* no estate can pass except what is in his
own occupation, and is also situate in that town.

Testing the present case by these rules, the deed is
operative, and will pass the lot in question, though it
does not lie in the twelfth general allotment of the pa-
tent; the description of the premises by lot No. 1. of
the smaller lots into which lot No. 3. of the subdivision
of lot No. 10. had been divided, sufficiently designates the
lot intended to be granted, and the addition of the ge-
neral allotment, which is unquestionably the addition of
a false or mistaken circumstance, cannot vitiate what
was before certain, and frustrate the grant. In addition
to the certainty already mentioned, the courses and dis-
tances of the lot for which the plaintiff sues, precisely
correspond with those given by the deed, and a hemlock
tree marked 2. and 3. and recognised in the deed as the
north-west corner of lot No. 2., and as standing in the
easterly bounds of lot No. 9. of the said allotment,
is in fact thus situated; and also two monuments
of stakes and stones, and the quantity given by the
deed, are all found to concur with respect to the lot in
question. It appears from the evidence, that there was a
lot No. 10. in the twelfth allotment of the *Kayaderosseras*
patent, but that it never had been subdivided, and con-
sequently it cannot be that the lot in question lies in that
general allotment. It does not appear, and however the
fact may be, we cannot travel out of the case, that there
is any other general allotment which has been subdivided
in such manner as to correspond with the description in

the deed, in all but the general allotment. The insertion NEW-YORK,<br>Nov. 1810.<br>JACKSON<br>v.<br>CLARK. of the words " with a dwelling-house thereon," appears also to have been a mistake of the scrivener; but admitting that parol evidence could not be received to show the mistake, it was, at most, a false circumstance, and cannot control the other description in thé deed.

As to the other point, I can perceive no objection to the postponement of a sale under a mortgage, on the day and at the place of sale, provided there is the same notice given which the act requires in the first instance; I mean with respect to the publication in the paper, and the notice on the door of the court house. The six months' notice is not solely for the purpose of giving notoriety as to the time and place of sale; it was intended to give the mortgagor, in addition to that, an opportunity to raise the money. In analogy to the constant practice of sheriffs' postponing sales, without giving the six weeks' notice at first required, and which has not been questioned, I should say that a postponement with the restrictions I have mentioned, might be made.

But in this case it is admitted that the sale was made on the 12th of *August*, 1806, the day first appointed in the notice. On the 16th of *June*, 1806, a postpone.. ment underneath the original notice was begun to be published in the newspaper, and continued until the 7th of *August*, after which both were omitted.

The postponement was in these words : " Note, the sale of the above property is postponed to *Wednesday*, the 3d day of *September* next. *James Rogers*." Of this postponement, no notice was given on the door of the court house, and it was so far disregarded, that the sale took place according to the original notice. Whether there could be a postponement before the day of sale, unless upon a six months' notice, as the act directs, is one question; but it is a different question,

JACKSON
v.
CLARK.

whether, after a public notice of a postponement by the mortgagee, he could proceed to sell at the time first appointed, disregarding wholly the postponement. If this was a sale by a sheriff, the law would protect the purchaser, and hold the sale valid; but in case of an insufficient notice, it would punish the officer. In this case, the regularity of the sale is to be made out as a part of the purchaser's title, and if irregular, he takes nothing by his deed. In my opinion, the sale is irregular and void; the mortgagee, after publicly postponing the sale, which was a thing wholly under his control, was bound by it, and could not so far disregard it, as to proceed on the original notice. If the contrary position should be upheld, it would enable mortgagees to commit frauds, by selling, after they had, by their own acts, lulled the mortgagor into security.

For these reasons, I am of opinion, 1. that the premises did pass by the mortgage; and, 2. that the sale under it is not valid.

<p align="right">Judgment for the plaintiff.</p>