# CASES

ADJUDGED IN

# THE COURT OF CHANCERY

## OF THE STATE OF NEW-JERSEY.

### JULY TERM, 1834.

---

## WILLIAM P. ROBESON and JOHN P. B. MAXWELL v. JOHN HORNBAKER and JESSE BARBER.

Equity will not lend its aid to carry into effect an imperfect or doubtful agreement.

The general rule is, that every agreement of which there should be a specific performance, ought to be in writing, certain and fair in all its parts, and for adequate consideration.

The court will not refuse its decree for specific performance, merely because the agreement doth not state in what township, county, or state the lands agreed to be conveyed, lie, provided the description of the premises is not thereby rendered altogether indefinite.

Reasonable certainty in the description is all that is required; and it is not material in what way the requisite certainty is attained.

BILL for specific performance of the following agreement, made on the 23d of March, 1833 :—"Article of agreement made between William P. Robeson and John P. B. Maxwell, of the first part, and John Hornbaker and Jesse Barber, of the other part, witnesseth—that the said party of the first part agrees to sell to the said Hornbaker and Barber, forty acres of land and the water-rights, exclusive of mines and minerals; the line to

[Robeson and Maxwell v. Hornbaker and Barber.]

commence at a corner to be made in the middle of the road and in the old straight line of Fenton and Lofter's surveys, and to run thence along said road to a certain stone on the west side of said road and south of another old road, and then to run from thence a westerly course, crossing the Brasscastle brook below where the small stream puts in from the meadow, and running on the south side of said creek out near where a certain stake is put up in the middle of the creek, so as to give the said party of the second part a chance of watering their cattle, &c. in case they should enclose said forty acres; and from said corner in the middle of the creek the line is to run a straight course, so as to intersect the old line of Fenton and Lofter's on the top of the hill near a large chesnut or rock-oak tree with large top, the most westerly tree of three large trees and the top leaning a little easterly, and from thence down said old line to the place of beginning. It is understood, in case there should turn out in running to be more than forty acres, then the line is not to go so far up the creek, and if there should be less, then the line is to run as follows: a corner to be made not more than two chains in the line running to the mountain from the corner in the creek, and to run up the creek and from thence in the same old course to the mountain, so as to make up forty acres strict measure: and for and in consideration of the same, the said Hornbaker and Barber agree to pay to the said party of the first part, upon their making a warrantee title, fifteen hundred dollars; one third down, and the other in two yearly payments, without interest; to be secured by bond and mortgage on the premises. It is understood that in case it is not convenient to pay the purchase money as it comes due, then if the interest is paid punctually the parties of the second part not to be pushed for the money under five or six years from this spring. It is understood that the mill is to be built on the said tract; but in case it is not built thereon, the payments are to be immediately due, or other satisfactory security to be given."

Demurrer by one of the defendants to part of the bill, assigning for cause of demurrer, "that the said supposed article of

agreement, note or memorandum thereof, doth not state in what township, county or state the lands intended or agreed to be conveyed thereby do lie."

The cause was heard upon the demurrer.

*Maxwell*, for complainants.

*Morris*, for defendants.

THE CHANCELLOR.    The bill is for a specific performance of a contract for the sale of lands, entered into between the parties, in March, 1833.    The complainants agreed in writing to sell to the defendants forty acres of land, including certain water-rights, on Brasscastle brook or creek, for the sum of fifteen hundred dollars.    The bill sets out the land, and alleges that the complainants tendered a deed to the defendants according to the contract, and that, although they had taken possession of the property and cut wood and timber on it, they refused to accept the deed, and pay or secure to pay the money, according to the contract.

Hornbaker has answered, and admits the whole case.    Barber has demurred to part of the bill, and answered to the residue. He assigns as cause of demurrer, " that the said supposed article of agreement, note or memorandum thereof, doth not state in what township, county or state the lands intended or agreed to be conveyed thereby, do lie."    And the only question is, whether by reason of that omission, the description of the premises is so uncertain and vague, as to render the action of this court improper or inexpedient.

It is contended on the part of the demurrant, that as to the locality of the premises, the agreement is altogether indefinite; that it cannot be understood without calling in and relying upon the aid of parol testimony, which is not admissible under the statute of frauds; that an action could not be maintained on it in a court of law, and therefore a court of equity will not interfere.

This court will not lend its aid to carry into effect an imperfect or doubtful agreement. It is not obliged, as lord Hardwicke says, to decree every agreement entered into, though for valuable consideration, in strictness of law. Every agreement of which there should be a specific performance, ought to be in writing, certain and fair in all its parts, and for adequate consideration : *Underwood* v. *Hitchcox*, 1 *Vesey, sen.* 279. This is the general rule, and has usually governed in cases of this kind.*

I think, however, it would be too strict to bring the present case within it. The omission of the town or county will not necessarily render the description of the property altogether indefinite. It may be sufficiently defined in a variety of ways, without mentioning either. There are many places or streams that are so well known, as to form better marks of designation to property than the names of the county or township would furnish ; and as the only object is reasonable certainty, it is not material in what way the certainty is attained.

The property is described in the article of agreement as forty acres of land, and the water-rights ; the line to commence at a corner to be made in the middle of the road and in the old straight line of Fenton and Lofter's surveys, and to run thence along said road to a certain stone on the west side of said road, and south of another old road, and then to run from thence a westerly course, crossing the Brasscastle brook below where the small stream puts in from the meadow, and running on the south side of said creek out near where a certain stake is put up in the middle of the creek. There the corner is to be the middle of the

---

* But courts of equity will enforce the specific performance of a *parol* agreement, when it is fully set forth in the bill and confessed by the defendant's answer, though the contract be required by the statute of frauds and perjuries to be in writing : *Attorney Gen.* v. *Day*, 1 *Vesey, sen.* 221; *Spurrier* v. *Fitzgerald*, 6 *Vesey*, 555 ; *Whitchurch* v. *Bevis*, 2 *Bro. C. C.* 566; *Cottington* v. *Fletcher*, 2 *Atkyns*, 156 ; 1 *Fonb. Eq.* 179, book i. ch. 3, s. 8 ; 2 *Story's Eq.* 57. Courts of equity will also enforce the specific performance within the statute of frauds and perjuries, where there has been a part performance of the parol agreement : 1 *Fonb. Eq.* 181, 183, note e ; 2 *Story's Eq.* 62.

[Robeson and Maxwell v. Hornbaker and Barber.]

creek, so as to give the said party of the second part a chance of watering their cattle, &c. in case they should enclose the said forty acres. And from said corner in the middle of the creek, the line is to run a straight course so as to intersect the old line of Fenton and Lofter's, on the top of the hill near a large chesnut or rock-oak tree with large top, the most westerly tree of three large trees, and the top leaning a little easterly, and from thence down said old line to the place of beginning.

In this description there is as a guide, in the first place, the Brasscastle brook, which is a stream well known in that part of the country where the parties reside. It is evident from the agreement, that it is a water-course commanding a good head of water. It is a natural object about which there can be no dispute or mistake. Then, again, the line of the property intersects the old line of the Fenton and Lofter's surveys, and makes that line a part of its boundary. These ancient surveys are in many parts of the country as well understood and known as the lines of townships or counties. They constitute the most notorious and safe boundaries of property, especially wood land, as I take the present to be.

With these designations of locality in the description, (to say nothing of others,) I see no propriety in turning the party out of court on a demurrer. It should be a very gross case to justify such a course. The authorities do not warrant it. In 9 *Co.* 46—the earl of Shrewsbury's case—it was contended that the king's grant of the office of steward of the manors of Mansfield, Bolsover and Horseley, was void for uncertainty, because the county in which the manors were situated was not mentioned ; for it was said, and so the truth was, that the king had divers manors of the same names in several counties ; and it cannot be seen what manors he intended to grant ; that the intent ought to appear in the grant, and not by collateral averment. But by the court, the grant is certain enough, though the county is omitted.

In *Jackson* v. *Clark and al.,* 7 *John. Rep.* 217, the property in the deed was distinguished as " Lot No. 1 of the smaller lots

[Robeson and Maxwell v. Hornbaker and Barber.]

into which Lot No. 3 of the subdivision of Lot No. 10 in the 12th general allotment of the patent of Kayaderosseras is sub-divided, beginning at a hemlock tree," &c. and so bounding it by lots of different numbers adjoining it. It was objected to for uncertainty; and one objection was, that there was no town or county mentioned, which would be decisive of the situation. The court overruled the objection. See also *Blague* v. *Gold, Cro. Car.* 447, 473; 4 *Tyng's Mass. R.* 205; *Dyer,* 50.

In the case of *Barry* v. *Coombe,* 1 *Pet. U. S. Rep.* 640, the court decreed the specific performance of a contract much more uncertain and imperfect than the present one. Coombe made out a statement of an account between himself and Barry, con-sisting of various items, amounting to a large sum. In this statement he credits Barry as follows: " By my purchase of your half E. B. wharf and premises this day, as agreed on between us, $7,578 63." This paper was signed by Coombe, each par-ty having a copy. On a bill filed for a specific performance, Barry set up the uncertainty of the agreement, and put himself upon the statute of frauds, as the defendant has done here. The court said, that for any thing that appeared on the face of the instrument, E. B. wharf may be as definitive a description of locality as F. street; and then the ambiguity could only arise if it be shown that the bargainor had more than one house in F. street, like the two manors of Dale, put in the old books.

Demurrer overruled.