## ELLIS v. BURDEN.

1. Where E. and B. entered into an agreement in writing, that E. should do the brick work and plaistering on sixteen tenements, in St. Francis street, between Dearborn and Wilkinson streets, in Mobile, and on the completion of the work, B. agreed to give to E. a deed for three of the tenements, Held, that a specific performance would be decreed at the suit of E. who had performed the contract on his part.

2. Also, that the silence of the contract, as to which of the three tenements were to be conveyed to E. was no obstacle to a specific performance; as that was not a term of the contract, but related to the subject matter, as to which parol evidence was admissible; and, that as the parties themselves, had subsequently designated the tenements which should be conveyed to E., that equity would enforce it; but, that if such had not been the case, as the tenements were all of the same value, it was competent for the court to make the designation.

3. That the deed contemplated by the parties, in the agreement, was a conveyance in fee simple; and that to effectuate their intention, B. should execute to E, a deed in fee simple, for the three tenements designated by the parties, with a covenant against incumbrances, done or suffered by him.

Ellis v. Burden.

4. A court of chancery will not decree a specified performance, where it would ope-
rate unjustly on, or be greatly prejudicial to the defendant.

Error to the first district, Southern Chancery Division sitting
at Mobile.

THIS was a bill filed for specific performance, by the plaintiff
in error, against the defendant in error.

The bill charges, that the respondent applied to him to build
sixteen small tenements in the city of Mobile, and do certain
other work for him, and in compensation therefor, proposed to
make him a title in fee simple, to three of said tenements; the
wood work of the houses to be done by the respondent: that
they entered into an agreement in writing to that effect, which
is set out in the bill. The instrument commences, "Specifica-
tion of the brick and plaistering work required, of sixteen tene-
ments, to be erected on St. Francis street, between Dearborn and
Wilkinson streets, in the city of Mobile." The parties then
proceed to describe the manner in which the houses should be
erected, and conclude thus, to be paid for in the following man-
ner:

| | | | | |
|---|---|---|---|---|
| "Brick work of sixteen tenements, | | : | $1002 | 00 |
| Brick for well, | : | : | 50 | 00 |
| "  for privy sinks | : | : | 44 | 80 |
| Moore's house, brick work | : | | 274 | 32 |
| Plaistering of do. | : | : | 219 | 00 |
| Plaistering sixteen tenements | : | | 1200 | 00 |
| Plaistering John Burden's office, and building chimney | | | 80 | 00 |

$2900  12

"On the completion of the herein specified amount of work,
the herein named John Burden agrees, to give a deed to three of
the herein named sixteen tenements, rating each at one thousand
dollars; and further agrees, to take Robert Ellis' obligation for
the balance of the amount, whatever it may be less than three
thousand dollars: and further, the herein named Burden agrees
to take the balance above named, in bricks or work, at their rate

of selling when this contract is completed, provided the said Ellis is disposed to pay in that form: and the first obligation named, to be payable in six months after the possession of the above named tenements are given: and further, should the herein named Ellis, fail to comply with this contract, the herein named Burden shall be at liberty to finish the same. and charge the account of the said Ellis for non performance on his part: and should the said Burden fail to comply with his part of the contract, after the work is completed within the specified time, then the said Ellis shall proceed to recover the contract in a legal manner: and that this contract prevents the said Burden from disposing of the said three tenements in any other manner than herein described. (Signed) JOHN BURDEN, ROBERT ELLIS."

The bill further charges that Burden, of his own mere motion, added to the rear of each of the sixteen lots, upon which the houses were to be erected, six feet of ground: and also, in the same manner, erected in the rear of each house, a small wooden kitchen, for the use of the house. These additions were not contemplated by the agreement or original plan, and promised complainant at the time of their erection, to include the additional ground and kitchens, with the tenements he was to recover, and to give him the conveyance therefor, at a reasonable valuation: and avers that they are not worth more than one hundred dollars each.

The bill further charges, that the complainant well and truly performed his part of the contract, in the erection of the said houses, and other work, as stipulated in the agreement, except, that he was prevented by the failure of the defendant in doing the wood work, from finishing the plaistering before the 14th December instant. He further charges, that while the work was in progress, Burden and himself agreed, that numbers three, four and five, of said tenements, numbering from east to west, should be assigned to complainant.

The bill further charges, that Burden has executed a mortgage on the whole sixteen lots, for the sum of eleven thousand dollars;

but that no part of the mortgage debt was to be paid by him; and prays a specific performance of the contract.

The respondent, by his answer, admits the making of the agreement; but insists, that it was intended as a mere specification of work to be done, and materials furnished; that it never was intended by the parties, that any of the tenements should be conveyed to the complainant, but that the clause to that effect in the agreement, was intended to secure him the payment of the money, in the nature of a mortgage.

Answer further states, that respondent furnished materials for building the houses, to the amount of twelve hundred dollars, for which he has a just claim on the complainant, of which he makes an exhibit, and states that it was agreed between him and complainant, that the materials thus furnished, should be in part payment of the money agreed to be paid for the erection of the buildings, and other work agreed to be done. Denies having made an agreement with complainant, that he should have the three tenements designated, three, four, and five, or any others, states that an arrangement was entered into to raise the money for complainant, through the bank; that the notes were made payable in one, two and three years. The notes were executed and a mortgage to the bank prepared, on five of the tenements, by respondent, but the application to the bank was unsuccessful.

Answer further states, that after the making of the contract set out in the bill, he changed his design, adding six feet to the rear of the lots, and erected kitchens, and finished the houses, both inside and outside, considerably better than was at first anticipated; to all which, complainant made no objection. Insists, that the additions and alterations made by him, have added at least thirty per centum to the value of the tenements. Admits that he has leased the tenements, number three, four and five, and received the rent, and states several mortgages which have been given on the houses.

Wm. Norton, a witness for the complainant proved, that about June, 1836, the defendant informed him, that he was about erecting sixteen small tenements on St. Francis street, and showed him the plan, and proposed to witness to work for him, and take one of

the houses for pay, which a day or two after was agreed on, and about the 5th of June, he went to work. Enquired of witness if he knew of any one who would do the brick work, and take houses in pay. Subsequently told him, he had made a contract with Ellis to do the brick work and plaistering; showed him the contract, and told him Ellis was to have three of the houses. Told witness also, that he was to assist Ellis, by furnishing him lime and negro labor, and upon witness remarking, that Ellis would not be entitled to three of the houses, respondent remarked that he had other work to do; and at another time said, he had thirty houses to build, and that complainant would do work enough for him to make up the deficiency. Heard a conversation between complainant and respondent, as to the houses which should be Ellis'. Ellis wished to have some which respondent said he had sold, but told Ellis to take choice of the rest. Ellis then selected three, numbered three, four and five; the respondent replied " well." The houses were afterwards known by the workmen as Ellis' houses. Heard conversation at other times in which respondent admitted, the houses to be Ellis'; upon one occasion proposed to witness to buy his and Ellis' houses, if they desired to sell. Respondent told witness he intended to add six feet to the lots, and to build kitchens, and proposed to witness that it should be continued through the block, for the sake of uniformity, and that he would charge a reasonable price for the addition, which was agreed to; understood Ellis to be included in the arrangement. Thinks the addition worth ninety-five dollars.

A. B. Cammach testified, that respondent told him of his intention to erect the buildings, and desired him to recommend some one to do the brick work and plaistering, when he recommended the complainant—subsequently respondent told witness, he had employed complainant, who was to take some of the buildings, he thinks three, in payment. Witness was frequently there, while the buildings were in progress. Complainant showed him the houses he was to have; they were on the end towards Claiborne street, one or two, from the corner, and numbered eith-

er one, two, and three, or three, four, and five. Respondent was present at one of these conversations, and made no objection. Understood that complainant was to have a title in fee simple.

Thomas S. James deposed, that respondent told him, he engaged complainant to do the brick work and plaistering of sixteen small tenements, and that he was to receive three of them, in compensation for his work. The brick work and plaistering, was done in a workmanlike manner. The kitchens worth about one hundred dollars.

William R. Smith—heard respondent say, he wished to get a workman to erect sixteen small tenements, and receive a portion of the buildings as compensation.

George Francis.—Is a brick layer—worked on the buildings —has frequently heard complainant say in presence of respondent, that the houses numbered three, four and five were to be his; and frequent allusions to them as Ellis' houses, in presence of respondent; the houses were numbered from east to west.

Thomas Mayberry.—Respondent told him he had engaged a brick layer to build the houses, and taken two in payment, as well as he can recollect.

Benjamin F. Marshall.—Had a conversation with respondent, who told him he was to pay for some part of the work in buildings. Understood he was to give a title in fee simple, heard nothing said of a mortgage.

Witnesses for respondent—John Mayrant says, that at the instance of respondent, he signed three promissory notes, attached to his deposition which respondent told him were for the benefit of Ellis, and on account of a debt he owed him. Witness remarked, he did not know Ellis, and could not sign the notes for his accommodation, but would do so for his (Burden's) accommodation. Burden said, he would be obliged to pay money to Ellis, unless he could get three notes, which Ellis would receive.

Henry Childs.—Is a clerk in the Branch Bank, at Mobile.— The notes referred to by the preceding witness, were offered to the bank for discount, in October or November, 1837; the notes and mortgage attached to his deposition, were entered on the offering book. The notes were not discounted. Has no re-

collection who deposited the notes in banh; but presumes it was Ellis, as his is the first name on the notes. If they had been discounted, Ellis would have been entitled to the proceeds. The notes referred to in the deposition, are dated 2d October, 1837, payable the 2d day of October, 1838, 1839, and 1840, for seven hundred and thirteen thirty-three hundredths dollars; seven hundred and sixty dollars, and eight hundred and six sixty-seven hundredths dollars, signed by Robert Ellis, John Burden, and John Mayrant. The mortgage is of the same date, executed by respondent to the Branch Bank at Mobile, on a portion of the tenements described in the bill, and answer, to secure the payment of the above notes.

Wm. B. Raines, proved that the lime and sand, for the erection of the houses, was furnished by respondent. On cross examination, says, that he saw a plan of the houses, which he describes particularly, and says it was in substance, the same as one attached to his deposition.

The chancellor dismissed the bill, on the ground, that the written agreement was too defective to entitle the party to a specific performance, and that it could not be aided by parol proof.

From this decree, the complainant prosecutes this writ of error, and assigns for error, the dismissal of the bill.

CAMPBELL, for the plaintiff in error—[cited 4 Comyns Dig. 542; E. 6 & 9; 3 Bos. & Puller 375; 3 Wilson 141; 3 Vesey & B. 189; 2 Term, 498; 3 Merivale, 53; Roberts on frauds, 82; 3 Swanston, 437, note; 1 Peter's 640; 2 Story's equity 17.]

GAYLE, contra, insisted that the contract was too imperfect to authorize the court to decree a specific performance.

ORMOND, J.—If any material term of a written contract, has been omitted by the parties, it cannot be supplied by parol. To permit this, would be at once to abrogate the statute of frauds, as was held by this court, in the case of Adams v. McMillan, Executor, 7th Porter, 73. See also the case of Clinian v. Cook, 1 Schoale & Lefroy, 22, where all the cases on this subject are learnedly examined, and Beard v. White's administrator at the present term.

Ellis v. Burden.

What then does the written contract relied on in this case contain, and in what is it deficient. It proposes the erection of sixteen tenements on St. Francis street, between Dearborn and Wilkinson streets, in the city of Mobile, the size and description of which are minutely ascertained; it further proposes that the complainant shall do the brick work and plastering of the sixteen houses, at stipulated prices, the whole of which amounts to two thousand nine hundred dollars, and in consideration thereof, the respondent agrees to "give a deed for three of the herein named tenements, rating each at one thousand dollars; and agrees to take the complainant's obligation for the balance of the amount whatever it may." It is deficient in not stating the size of the lot; the particular tenements which were to be conveyed, and the covenants which the deed was to contain.

The word tenement employed by the parties, is one of large signification. Lord Coke says, " tenement is a large word to pass not only lands and other inheritances which are holden, but also offices, rents, commons,'profits, *apprendre* out of lands, and the like, wherein a man hath any frank tenement, and whereof he is seized." Coke Litt. 1 vol. 219. The word *tenement* was therefore sufficient to pass a house and the lot of land on which it stood, with its appurtenances as ascertained by the enclosure; and is, indeed, the appropriate word to include all this without a paraphrase. See also, Doe, *ex dem* Clemens v. Collins, 2d D. & E. 498, and Doe on the demise of Walker v. Walker, 3 B. & P. 375; Barry v. Coombe, 1 Peters' Rep. 640.

The question, which three of the sixteen houses the complainant was to receive, is admitted to be one of more difficulty.

It is laid down by one of the ablest of the English judges, Sir William Grant, in the case of Ogilvie v. Folgambe, 3d Murvale 52; that parol testimony is always admissible, to show the subject matter of the contract. He says: " the subject matter of the agreement is left, indeed, to be ascertained by extrinsic evidence and for that purpose such evidence may be received.

59

The defendant speaks of '*Mr. Ogilvie's house*,' and agrees to give £14,000 for the '*premises*,' and parol evidence has always been admitted in such a case, to show to what house, and to what premises the treaty related.''

If the houses in this case had been built, when the agreement to convey three of them was entered into between the parties, parol evidence would have been admissible to show to which of them the contract related; or in the language of the case just cited, to explain the subject of the contract. But this is a much stronger case. Here the houses were not built at the making of the contract, and could not be well designated; nor was a designation necessary, as they were all to be alike, and all of the same value: and if the parties themselves had not, while the work was in progress determined which should be allotted to the complainant, no difficulty could have arisen on that score. But the contract was designedly left open in this particular, and supplied afterwards, as appears most conclusively from the proof, by the agreement of the parties, to which they will be held by this court.

It would indeed be a reproach to our law, if a contract of this description could be evaded, because the subject matter on which the contract was to operate, was not definitely expressed, when the very object of the contract was to give existence to the subject on which it was to operate.

The defence set up by the defendant that the agreement was intended as a mortgage, is not made out by the proof. The execution of the notes by the complainant, which were to be discounted in bank, is not of itself sufficient to establish that fact. The declarations of defendant to Mayrant in the absence of the complainant, are entitled to no weight whatever.

It appears both from the bill and answer, that alterations were made in the original plan, by adding six feet to the rear of the lots, and erecting kitchens. This was done at the instance of the defendant, and assented to by the complainant. It was a verbal alteration of the written agreement, by the consent of the parties, which as it was prejudicial to the defendant, and for the benefit of the complainant, it is but right he should

be compensated for.  The books are full of cases establishing the principle that a court of chancery will not decree a specific performance, where it would operate injustice to the defendant. The complainant in this case admits that he consented to the additional outlay, and cannot obtain a decree for specific performance but on the terms of making compensation for the additions made with his consent, which indeed he professes a willingness to do.

It remains but to consider whether the contract is defective, in not describing the character of the deed, to be executed to the complainant.    A deed as the term is employed in this contract, must mean a deed in fee simple; as it is clear that the parties contemplated that the complainant should be the owner of the three tenements; but as no warranty was stipulated for, none can be implied but what flows necessarily from the agreement to convey.    As a deed to the lots would be of no value to the complainant, if the respondent had previously conveyed to another, or incumbered it to their value, it follows that the deed contemplated by the contract, was at least the title of the grantor, free from any incumbrance, done or suffered by him; any other title would be merely illusory.

The decree of the court below is therefore reversed, and the cause remanded, with instructions to the chancellor to cause an account to be stated between the parties, charging the complainant with the value of the additions made to the tenements by the additional six feet of ground, and the erection of kitchens, and allowing him the rents received by the defendant, since the time when the tenements by the contract, should have been conveyed; that the defendant convey by deed in fee simple, the tenements described in the bill, numbered three, four, and five, with covenant of warranty against any deed, or incumbrance, executed, done, or suffered by him.   Let the defendant pay the costs of this court.