## THE BANK OF MOBILE v. THE PLANTERS' AND MERCHANTS' BANK OF MOBILE, ET AL.

1. R. executed a mortgage to the B. of M. in which, after describing certain lands with particularity, proceeded thus: "together with three hundred and fifty acres of land belonging to the said R., contiguous to the lands above described, or situated near the same:" *Held*, that upon a bill to foreclose, it was allowable for the mortgagee to prove what lands were embraced by the term "contiguous" to those specifically described; at least to adduce proof that R. was the proprietor of three hundred and fifty acres, and no more, adjoining, or near to the lands designated.

2. Where a mortgage describes lands generally as "contiguous" to others it specially designates, and a bill brought for its foreclosure particularizes them, and alledges that a third person (made a defendant) purchased them with a knowledge of the mortgagee's lien; it is sufficient to throw the *onus* of sustaining the allegation upon the complainant, for such defendant to answer, that he did not know that the lands in question were embraced by the complainant's mortgage, and insists upon proof of the fact; *further*, that he was a purchaser for a valuable consideration, without notice of the complainant's claim.

3. The failure of the defendant to answer an allegation, not charged to be within his knowledge, and which cannot be so intended, will not be construed into an admission of its truth; if, in such case, the answer is defective, the complainant should except, and pray the Court to require one more complete.

Writ of Error to the Court of Chancery sitting in Lowndes.

The plaintiff in error filed a bill to foreclose the equity of redemption to certain lands, described as follows, viz: The west half of the north-west quarter of section three, of township fifteen, in range twelve, containing eighty-five 83½-100 acres; the west half of the south-west quarter of section thirty-five, township sixteen, and range twelve, containing eighty 20-100 acres; the north-east quarter of section two, in township fifteen, range twelve, containing one hundred and fifty-eight 30-100 acres; the south-east quarter of section thirty-three, in township sixteen, range twelve, containing one hundred and sixty acres; the west half of the south-west quarter of section thirty-three, of township sixteen, range twelve, containing eighty acres; the east half of the south-west quarter of section thirty-three, of township sixteen, in range twelve, containing eighty acres, "together with three hundred and fifty acres of land belonging to the said Robertson, contiguous to the lands above described, or situate near the same," —all of which lands it is alledged lie in the county of Dallas. These lands were conveyed by way of mortgage on the 21st day of February, 1838, by the defendant, Robertson, to secure the repayment of $11,680 60, which had been lent to him by the complainant.

The complainant's bill was afterwards amended, and in the amended bill it is alledged that the lands which are described in the mortgage as lying contiguous, &c. to those particularly designated, are the following, viz: the west half of the north-west quarter, and the west half of the south-west quarter of section four, in township fifteen, and range twelve; and the north-east quarter of section five, in township fifteen, and range twelve, situate in the county of Dallas, and within the Cahawba land district. It is then stated, that the Planters' and Merchants' Bank of Mobile, and one Abigail McKenzie, with a knowledge of the fact that these lands were embraced by the complainant's mortgage, respectively purchased certain portions of the same; but what part each one of these claims is unknown, and the complainant therefore prays, that they may disclose and set forth their deeds thereto. To this is superadded a charge, that the Planters' and Merchants' Bank claim the whole of these lands, at a sale made under an execution against the estate of the defendant, Robertson; that they are all the lands that the mortgagor owned "contiguous" to those particularly described in the mortgage, and

this fact was well known to the Planters' and Merchants' Bank at the time of its purchase. The original and amended bills each pray an account of what is due to the complainant, for principal and interest, and a decree of foreclosure and sale, not only of the lands specifically described in the mortgage, but those referred to as contiguous, &c.

The Planters' and Merchants' Bank answers, that it knows nothing of the contracts or dealings of the defendant, Robertson, with the complainant, but avers that he was indebted to this respondent, in the sum of $2,780, due 15th February, 1839, which having failed to pay, a judgment was recovered therefor, and under an execution issued on that judgment, the lands described in the complainant's bill as embraced by the general designation in the mortgage, were levied on and sold by the sheriff of Dallas. At that sale, this respondent became the purchaser, and received the proper conveyance. Whether the lands were intended to be embraced by the mortgage the respondent does not know, but insists that the complainant shall be held to strict proof.

The defendant, Robertson, and McKenzie having failed to answer the bill, the same was taken for confessed as to them.

The cause was heard, by consent, upon bill and answer, and the Chancellor adjudged, that as the answer of the Planters' and Merchants' Bank denied all knowledge as to the fact, whether the lands which it claims under the purchase at the sheriff's sale, were embraced by the mortgage, the *onus* of proving the affirmative, rested upon the complainant. There being an entire want of proof on this point, thus far, the bill was dismissed without prejudice, as to the Planters' and Merchants' Bank. An account was then ordered to be taken, and a decree of foreclosure and sale rendered as to the lands about which there was no controversy.

C. G. EDWARDS, for the plaintiff in error. The registration of the mortgage operated a constructive notice to creditors and purchasers of the mortgagor, of the lien which it created upon the *contiguous three hundred and fifty acres.* The point upon which the Chancellor rested his opinion does not arise. It is not denied by the answer, " that the mortgage refers to the lands in dispute," " that it included all the lands which Robertson owned," " that

Robertson owned no other lands contiguous." These allegations must be taken as admitted—the complainant could not be held to prove that Robertson had no other lands.

R. SAFFOLD, contra, made the following points: 1. If the description of lands be so uncertain that the locality of those intended to be conveyed cannot be known, then the conveyance is void for uncertainty. [4 Mass. Rep. 196, 205; Greenl. Ev. 349-50, and note; 6 Peters' Rep. 328, 345.] 2. After showing the state of things at the time the mortgage was executed, it must operate without the aid of parol testimony—the ambiguity is *patent*, and cannot be explained by parol testimony, but by an instrument under seal only. [6 Peters' Rep. *supra;* 1 Hill's Rep. (N. Y.) 17; 4 Id. 584; 19 Wend. Rep. 320.]

3. The cause being heard upon bill and answer, the evidences of debt intended to be secured, should have been produced, and the consideration of the mortgage proved. [2 McC. Ch. Rep. 14; 5 Ala. Rep. 9; 3 Hawk.'s Rep. 203; 2 Paige's Rep. 301.]

4. The registry of a mortgage should give full information, it is not enough that it should merely put a party upon inquiry to ascertain what property was intended to be conveyed. [1 Johns. Ch. Rep. 299; 18 Johns. Rep. 544; 2 Johns. Ch. Rep. 182; 15 Johns. Rep. 555; 2 Johns. Rep. 611-12.

5. Matter in avoidance stated in an answer, need not be proved by the defendant, when the cause is brought to a hearing *by consent,* on bill and answer. [2 Stew. & P. Rep. 189; 5 Id. 131, 141; 2 Ala. Rep. 215-7.]

COLLIER, C. J.—The authorities are uniform in declaring, that an ambiguity which does not appear on the face of the instrument, but is generated by some extrinsic collateral matter, is susceptible of explanation by a development of extrinsic facts; and there are adjudications which maintain that the rule that parol evidence is inadmissible to explain a patent ambiguity in a deed is by no means universal. In Colpoys v. Colpoys, Jacobs' Rep. 451, the Master of the Rolls said, "Where the person, or the thing is designated on the face of the instrument, by terms imperfect and equivocal, admitting either of no meaning at all by themselves, or of a variety of different meanings, referring tacitly or

expressly for the ascertainment and completion of the meaning, to extrinsic circumstances, it has never been considered an objection to the reception of the evidence of these circumstances, that the ambiguity was patent, manifested on the face of the instrument. When a legacy is given to one by his surname, and the christian name is not mentioned, is not that a patent ambiguity? Yet it is decided that extrinsic evidence is admissible. So where a gift is of the testator's stock, that is ambiguous; it has different meanings when used by a farmer and merchant." He cited the case of Doe ex dem Jersey v. Smith, 2 Brod. & Bing. Rep. 553, in which Mr. Justice Bayley thus states the principle on which extrinsic evidence is admitted in cases of a patent ambiguity: "The evidence here is not to produce a construction against the direct and natural meaning of the words; not to control a provision which was distinct, and accurately described; *but because there is an ambiguity on the face of the instrument;* because an indefinite expression is used, capable of being satisfied in more ways than one; and I look to the state of the property at the time, to the estate and interest the settler had, the situation in which she stood in regard to the property she was settling, to see whether that estate or interest, or situation, would assist us in judging what was her meaning by that indefinite expression." It was added by the Master of the Rolls, that if necessary, he could "refer to many other instances of resorting to extrinsic matter in cases of patent ambiguity." See also, Ely v. Adams, 19 Johns. Rep. 313-7.

A patent ambiguity within the rule laid down by Lord Bacon, which is not subject to explanation by extrinsic evidence exists, when it appears plainly from the face of the instrument, that something else must be added in order to enable one to determinine what was intended by the grantor. The admission of parol evidence in many cases would be, as his Lordship said, "to make that pass without deed, which the law appointeth shall not pass but by deed." Upon this principle it has been held, that where one person gave a bond to another for the conveyance of a certain number of acres of land, being parcel of a much larger tract, it was not permissible to show by extrinsic proof, what part of the tract it was intended to sell, and that the bond was void; unless an election might be coerced and a conveyance consummated of the number of acres designated, in some part of the entire tract.

Bank of Mobile v. P. & M. Bank of Mobile.

[Hunt v. Gist, 2 H. & Johns. Rep. 498.] It is said, if the description in a conveyance be so uncertain that it cannot be known what estate was intended, the deed is void; where there is a doubt, the construction must be against the grantor; and every deed ought to be so construed, if it can, that the intent of the parties may prevail. When the description of the estate intended to be conveyed includes several particulars, all of which are necessary to ascertain it, no estate will pass, except such as will agree to every particular of the description. But if the description be sufficient to ascertain the estate intended to be conveyed, although the estate will not agree to some of the particulars in the description, yet it shall pass by the conveyance, *ut res magis valeat quam pereat.* [Worthington, et al v. Hylyer, et al. 4 Mass. Rep. 196; Jackson v. Marsh. 6 Cow. Rep. 281; Jackson v. Clark, 7 John. Rep. 217.]

In Starling, et al. v. Blair, 4 Bibb's Rep. 288, a debtor, for the purpose of securing the payment of a considerable sum of money, gave a mortgage to his creditor upon "all the lots that he then owned in the town of Frankfort, whether he had a legal or equitable title thereto;" it was objected that the description of the lots intended to be conveyed was too general. The Court considered the objection novel in its nature, and were aware of no authority to support, or reason to justify it. "The expression," it was said, "though general, is not uncertain. It clearly and explicitly manifests the intention of the parties, and there is nothing unlawful in that intention. There may indeed be more difficulty in ascertaining the lots intended to be conveyed, where the language used in describing them is thus general, than if the lots had been designated by their numbers. But it is in the degree, and not in the nature of the difficulty that the two cases differ. It results in neither case from no abiguity on the face of the deed, but from extrinsic circumstances, and in both cases resort must be had to evidence *aliunde,* for the purpose of identifying the lots which are the subject of the conveyance." In Havens, et al. v. Richardson, 5 N. Hamp. Rep. 113, the deed contained these general terms: "All and singular other real estate of what nature soever, wheresoever situate, belonging to the said Reuben at the time of his decease."— It was insisted that the description was too loose and insufficient to pass the title to any particular estate; but the Court said, "a general description is

98

sufficient, if the thing granted can be ascertained. Here it can be ascertained of what land Reuben Shopley died seized." So a conveyance of lands in the patent of B. and of all other lands in the province of New York belonging to the grantor, will pass the residue of his lands in New York. [Jackson v. Delancey, 11 Johns. Rep. 365, S. C; 13 Johns. Rep. 537.] But in Jackson ex dem Carman, et al. v. Roosevelt, 13 Johns. Rep. 97, the deed relied on was a conveyance to a purchaser, at a sale made by a sheriff under legal process, and described the estate thus : " All the lands of Elizabeth Ellis, (and others,) situate, lying, and being in the patent commonly called and known by the name of the Hardenburgh patent." The Court ruled that the description was too general to authorize the recovery in ejectment of any specific tract of land—that it did not define the lots, or parts of lots of land owned by the defendant named in the judgment.

The case of Ellis v. Burden, 1 Ala. Rep. 458, is strikingly applicable to the point we are considering. That was a bill for the specific performance of a contract, by which the defendant had stipulated to convey to the complainant three of sixteen tenements, the brick work and plastering of which was to be done by the latter. It was objected that the contract did not specify which of the tenements were conveyed to the complainant. This Court said, " If the houses in this case had been built, when the agreement to convey three of them, was entered into between the parties, parol evidence would have been admissible to show to which of them the contract related, or, in the language of the case just cited, to explain the subject of the contract. But this is a much stronger case." The case referred to was Ogilvie v. Foljambe, 3 Mer. Rep. 52, in which the Master of Rolls said, " the subject matter of the agreement is left, indeed, to be ascertained by extrinsic evidence, and for that purpose such evidence may be received. The defendant speaks of " Mr. Ogilvie's house," and agrees to give £1400 for the " premises," and parol evidence has always been admitted in such a case, to show to what house, and to what premises the treaty related. [See also, Den ex dem. Riddick v. Leggott, 3 Murph. Rep. 539; Den ex dem. Belk v. Love, 1 Dev. & Batt. Rep. 65.]

This notice of the authorities is quite sufficient to show, that every deed in which the lands proposed to be conveyed by it, is so generally described that they cannot be ascertained without

the aid of extrinsic proof, is not void, or inoperative. In the present case, the description is imperfect and equivocal, admitting in itself of no meaning, or of different applications, referring for the location of the lands in question to others which were particularly described in the same deed. These facts bring the case fully within the principle so clearly expressed in the citations from Jacobs and Broderip & Bingham.

In giving effect to a conveyance, it often becomes necessary to determine the locality of lands, and in such cases it is allowable to show by extrinsic proof, where was the line of conterminous tracts at some period in the past, and at what point descriptive monuments were then located, &c. It is not necessary that the description in a deed should be so exact as to show with unerring precision what property was conveyed; in the language of Sir Wm. Grant in the case cited from 3 Merivale, *supra*, "the subject matter of the agreement," may be shown "by extrinsic evidence, and for that purpose such evidence may be received." This principle is explicitly recognized in Ellis v. Burden, *supra*.

We have seen that a general description is sufficient, if the thing granted can be ascertained, and in one of the cases cited, where the conveyance was of all other real estate of which a deceased person died siezed, it was held competent to show by parol evidence what lands were embraced by the description.

Upon the principles deduced from the citations we have made, it is perfectly clear that evidence was admissible to prove what lands were embraced by those contiguous or near to those specifically described. At least to adduce proof that Robertson was the proprietor of three hundred and fifty acres, and no more, adjoining or near to the lands referred to. This would be, but to identify the subject matter of the conveyance, and to make perfect and certain that which it had left imperfect and equivocal in contemplation of extrinsic evidence.

Let us however inquire whether it is inferrible from the bill and answer, that the lands now in controversy are embraced by the complainant's mortgage; for if such an inference cannot be indulged, the decree of the Chancellor must be affirmed. The allegations of the bill upon this point are substantially as follows : 1. That the lands described as being three hundred and fifty acres, &c., did by the contract and understanding of the parties refer to and include all the lands that the mortgagor owned, which were

situated near those specifically described in the mortgage, and that he was the proprietor of no other land than that against which the complainant seeks a decree of foreclosure and sale, situated contiguous or near thereto. 2. That the Planters' and Merchants' Bank, well knowing the premises, purchased certain portions of the three hundred and fifty acres of land, &c.

To these allegations the Planters' and Merchants' Bank answered, that it did not know that the land alledged to have been purchased by it, was part of the lands embraced by the mortgage of Robertson to the complainant. This defendant avowing its ignorance of this fact denied the same, and prayed that the complainant may be held to strict proof thereof—*and further,* averred that its purchase was made for a valuable consideration, without notice that the land in controversy had been previously conveyed by the mortgagor to the complainant.

It is objected by the complainant, that the Planters' and Merchants' Bank should have answered specially, whether the land purchased by it was near those particularly described in the mortgage, and whether the mortgagor owned any other lands contiguous or near to them; that the silence of the answer was equivalent to an admission of the averment of the bill on this point. The general rule, that whatever is specifically alledged in the bill, and not denied in the answer, must be taken as true, it is said, is subject to many exceptions and restrictions. In Thorington v. Carson, et al. 1 Porter's Rep. 257, our predecessors held, that the rule "must be confined to averments of matters within the knowledge of the defendant, a party or privy to the particular transaction; in such a case it would seem that the positive averment by one party, of the truth of the fact ought to be received as true, if not denied by the other."

The allegations that are unanswered cannot be intended to be within the defendant's knowledge. In respect to the first, any one acqainted with the manner in which lands are surveyed and numbered by the United States, might ascertain, without the assistance of proof, or personal observation, the relative position of all the lands described in the bill; but as it regards the second allegation, the fact it affirms, is one of which the mortgagor alone may be said to have certain knowledge. The Planters' and Merchants' Bank was neither party nor privy to the mortgage executed by Robertson to the complainant, or to any transaction

which would enable it positively to admit or deny the averments which it is insisted are unanswered. The failure then to answer specifically to these allegations, cannot be received as an implied admission of their truth.

We need not consider whether the answer is sufficiently responsive to the bill, in stating that the respondent does not know that the lands in controversy were intended to be embraced by the mortgage from Robertson to the complainant, and requiring that the same should be proved; or rather, whether the sum of all the allegations we are now considering amount to more than this, viz: that the lands claimed by the Planters' and Merchants' Bank are part of the three hundred and fifty acres described generally by their locality in respect to others, and were so known to it when it became the purchaser. Be this as it may, if the answer is defective, the complainant should have excepted to it, and cannot insist with success, that the bill should be taken for confessed, so far as it is unanswered.

It results from this view, that as there is no evidence to sustain the bill, the Chancellor could not have rendered a decree in favor of the complainant as to the lands to which the Planters' and Merchants' Bank set up a title. We need not consider the other questions raised at the argument, and will merely add that the decree is affirmed with costs.