## FLAGG *v.* BEAN.

A deed, conveying land by a description, which includes an entire tract, will be restricted to an undivided half, by a clause in this form, " meaning to convey all the land I purchased of B., set forth in his deed, recorded," &c., if that deed conveys but an undivided half.

So, if in such case the deed referred to did not include a parcel embraced in the description of the subsequent deed, such parcel will not pass.

A deed by a husband, of land of his wife, purporting to convey a fee, passes only his estate for life.

If the wife, by a separate clause, release her right of dower in the same land, nothing passes from her to the grantee.

The description of the premises demanded in a real action, will not be aided, or enlarged, or restricted, by a reference to any other instrument.

In a real action, the demandant must set forth his seizin, either *in his demesne as of fee,* or *as of freehold,* according to the fact.

WRIT OF ENTRY, in which Rufus Flagg " demands against Levi Bean, possession of a certain tract of land, situate in Rochester, bounded southeasterly by land on which said Bean lived, and which he occupied on the second day of September last past, (1849,) and by a cove, northeasterly by the Cocheco river, westerly by said tract, owned and occupied as `aforesaid by said Bean, and also

bounded by land of James Boyle, land of Joseph D. Heard, and by the road leading from Norway Plains village to Farmington village, said parcel of land being the same conveyed to the plaintiff by Silas D. Bryant, by deed dated on the first day of October, 1844, by said Levi Bean, by his deed dated the fourth day of April, 1845, and by Ann Pinkham, by her deed dated the fourth day of March, 1847; whereupon the plaintiff complains and says, that within twenty years last past, he was seized of the said demanded premises in his demesne as of fee, and the said Bean has since unjustly and without judgment disseized the plaintiff, and still holds him out," &c.

The case was tried upon the general issue.

The plaintiff gave in evidence a deed of five acres, part of the demanded premises, dated March 4, 1847, made by Ann Pinkham to himself; and no doubt was suggested that the plaintiff owned this tract until the 22d September, 1849, the date of a deed from the plaintiff to the defendant, which was the principal subject of dispute in the case.

He also gave in evidence a deed from Silas D. Bryant to himself, of one undivided half of $17\frac{1}{4}$ acres adjacent to the last named tract. This deed was signed and sealed by said Silas D. Bryant, and by his wife, Mary J. Bryant, and acknowledged by the husband alone. It purported to be a warranty deed from Silas, and the only operative words, so far as the wife was concerned, were "and I, Mary Jane Bryant, wife of the said Silas D. Bryant, in consideration aforesaid, do hereby relinquish my right of dower in the before-mentioned premises."

The fee of this property was admitted to belong to Mrs. Bryant, who is still living, and has children by her said husband.

He also produced a deed from Betsey Pinkham to Lydia Pinkham, dated June 12th, 1834, of the other half of said $17\frac{1}{4}$ acres, called the Dame lot. It was admitted that Betsey Pinkham had title to the premises; that Lydia Pinkham

subsequently married Flagg, the plaintiff, and is since deceased, leaving one child still living; that during her life three acres in severalty out of this tract was sold to Heard, which is not in controversy, and which reduces the tract lying in common to 14¼ acres; and that she conveyed 3½ acres in common in the rest of the tract to Betsey Pinkham.

He also produced in evidence a deed from the defendant, Levi Bean, to himself, dated April 4, 1845, conveying all his right in 3½ acres in common and undivided in the Dame lot, and all right in about three-fourths of an acre of land adjoining the Dame lot, called part of the Pinkham house lot.

It was admitted that Bean purchased both these parcels of Betsey Pinkham, who derived her title from Mrs. Flagg; that Mrs. Flagg purchased the whole of this part of the *house lot,* conveyed one half of it to Betsey, and died seized of the rest.

A doubt being suggested whether, in a count upon a seizin in fee, the defendant could recover any part of the premises, in which he showed only a life estate, it was agreed that the plaintiff might amend his writ by inserting separate counts for the different parcels demanded, setting forth his seizin according to the fact. This was not done at the moment, but the trial proceeded as if it had been done.

The defendant offered in evidence a deed from Flagg, the plaintiff, to himself, dated September 3d, 1849, conveying to Bean and his heirs, for the consideration of $200, " three certain pieces or parcels of land, situate in Rochester, and is bounded as follows, viz: southeasterly by said Bean's land, on which he now lives, and the cove, and northeasterly by the Cocheco river, and westerly by said Bean's land, and land of James Boyle, and land of Joseph D. Hurd, and westerly by the road leading from Norway Plains village to Farmington dock, so called, meaning to convey all the land I purchased of Silas D. Bryant, Levi Bean, and Ann Pinkham, and reference to their deeds for further particulars, as

follows: ˙Bryant's, April 30, 1845, book 195, page 350; Bean's, April 8, 1845, book 195, page 341; Pinkham's, March 5, 1847, book 199, page 72, meaning to convey all the land set forth in said deeds, and no more."

The deed contained the usual covenants of warranty, and a release of dower.

The plaintiff then introduced evidence tending to show that the bargain upon which the conveyance was made, was for a sale of one undivided half of the land described and bounded in this deed, and that the deed was written by the defendant, and was falsely and fraudulently read by him, as a conveyance of *one undivided half* of said land.

The defendant's evidence tended to show that the plaintiff was a good writer and reader of writing, accustomed to keep accounts and to draft leases, agreements, and other instruments; and that he read the deed over deliberately and carefully before he executed it, and that it was truly and correctly read to him by the defendant. There were circumstances tending to show that the three deeds referred to in the deed in controversy, were furnished to the defendant by the plaintiff before the deed was written.

The single question submitted to the jury was, whether the deed in question was falsely and fraudulently read by the defendant to the plaintiff, and its execution thus procured by fraud.

The jury were instructed, that if the deed was falsely and fraudulently read to the plaintiff by the defendant, for the purpose of deceiving and imposing upon him, and he was actually deceived and defrauded, and the deed was executed in its present form in consequence of such fraud, the deed would be void, even though the plaintiff was a literate person.

The court suggested to the jury that they would do well to look at the state of the title to the several parcels of land included in the writ, because if they should be of the opinion that the deed was made in its present form, through the

ignorance of the parties of the actual state of the plaintiff's title, it might have an important bearing, when they came to consider the direct evidence relating to the question of fraud.    The several conveyances proved and admitted were then recited, showing how they bore on each parcel of the property.    And the jury were asked to consider what might be expected to be the form of the deed, if Flagg undertook to sell one undivided half *in fee*, of the three tracts of land embraced in the general description of the deed, and the deed was drawn by an unskilful person, by the aid of the three deeds referred to in the conveyance.    Their attention was directed to the interest really conveyed, with the same view.    And the court stated the whole land bounded in the deed to be about $19\frac{5}{8}$ acres; while the plaintiff owned in fee,

$\frac{1}{2}$ of the $\frac{3}{4}$ acre, (house lot,) . . . . . . . . . . $\frac{3}{8}$

$3\frac{1}{2}$ acres Dame lot, . . . . . . . . . . . . . . . . $3\frac{4}{8}$

5 acres Pinkham lot, . . . . . . . . . . . . . . $5$ — $8\frac{7}{8}$

While he had only a life estate for Bry-
ant's life in half Dame lot, . . . . . . . . . . $7\frac{1}{8}$

For his own life in $\frac{1}{2}$ Dame lot, less $3\frac{1}{2}$
acres above, say . . . . . . . . . . . . . . . . . . $3\frac{5}{8}$—$10\frac{6}{8}$

Acres,    $19\frac{5}{8}$

The court, in making the above estimate, said to the jury that the disputed deed of Flagg to Bean conveyed only so much of the land specially described, as was conveyed by the deeds of Bryant, Bean, and Pinkham, therein referred to; and the words, *meaning to convey all the land set forth in said deeds and no more*, in that deed, mean all the land that was conveyed and passed by said deeds to Flagg, and not the whole land before bounded and described; that nothing was conveyed by Flagg's deed to Bean, but such estate and interest as was passed to him by those deeds; that the deed of Flagg to Bean conveyed only an estate for the life of Bryant in the land, which his deed purported to convey

and warrant to Flagg. No remark was made to the jury upon the effect of Bryant's warranty.

The court, after discussing the direct evidence bearing upon the question of fraud, charged the jury, among other things, that if they found that the deed of Flagg to Bean was not falsely and fraudulently read, their verdict should be for the defendant.

The plaintiff moved to set aside the verdict returned in favor of the defendant, on account of alleged errors in the charge of the court.

*Christie,* with whom was *Sawyer,* for the demandant.

This action is brought to recover the *whole* tract of land described in the writ, and the clause in the declaration " being the same land conveyed to the plaintiffs by Bryant, Bean, and Pinkham, by their deeds," &c., can have no effect to extend or restrict the claim to any thing more or less than the whole lot described, and it is immaterial whether all, some part only, or no part of said described tract was conveyed to the plaintiff by said Bryant, Bean, and Pinkham; this adjunct, whether true or false, being immaterial, as the description was perfect without it, and as it is of no importance who conveyed the land to the plaintiff, if he owned it, and the defendant has disseized him. That makes out the case, and it is not material for him to show that he had the land of the persons mentioned. The tract described and demanded embraces the 5 acres bought of Ann Pinkham, $14\frac{1}{4}$ acres of the Dame lot, and $\frac{3}{4}$ of an acre off the west side of the Pinkham house lot; that is, $5 + 14\frac{1}{4} + \frac{3}{4}$ acres; that is, 20 acres in all, that is demanded.

The demandant shows title in fee confessedly to the Ann Pinkham lot, 5 acres; to $3\frac{1}{2}$ acres in common in the Dame lot, bought of the tenant, and to half of the $\frac{3}{4}$ acre lot, part of the Pinkham house lot, also bought of the tenant; all equal to $8\frac{7}{8}$ acres. He also confessedly shows an estate for the life of S. D. Bryant in half: to wit, $7\frac{1}{8}$ acres of the

Dame lot, and for his own life in the residue: to wit, $3\frac{5}{8}$ acres thereof, and in $\frac{1}{2}$ of the $\frac{3}{4}$ acre lot, part of the Pinkham house lot; that is, $7\frac{1}{8} + 3\frac{5}{8} + \frac{3}{8} = 11\frac{1}{8}$ acres. Thus without controversy the demandant shows himself seized in fee of $8\frac{7}{8}$ acres, and as of freehold in $11\frac{1}{8}$ acres $= 20$ acres, the whole of the demanded premises. He thus shows himself entitled to recover the whole demanded premises, and must do so unless the tenant show good reason why he should not; and this he undertakes to do upon one ground, and *only one* ground, and that is, that the demandant, by his deed of the 3d of September, 1849, conveyed the whole of the demanded premises to the tenant.

To this the demandant makes two answers.

I. First, that the deed was obtained by fraud, and is, therefore, void.

This question has been submitted to a jury and found against the demandant, but he conceives that there were errors in the trial that entitle him to a new hearing of this matter.

1st. The instruction of the court to the jury, that the deed of Flagg to Bean conveyed only an estate for the life of Bryant, in the land which his deed purported to convey and warrant to Flagg, we think was erroneous. The deed of Bryant and wife, we contend, was intended to convey and did in fact convey and pass the entire interest of both of them, which, together, was the fee in the land purporting to be conveyed by said deed. The deed clearly conveys all Bryant's interest in the land; and we submit that it is and should be held sufficient to pass the wife's interest also. It was undoubtedly so understood and intended, both by Bryant and his wife as well as by Flagg, and this intent should be effectuated, if it can be. The wife had no dower or right of dower, and never could have had in these premises, but she had a remainder and no other interest, and she could have joined in the deed for no other purpose but to pass this

interest. If the word *remainder* had been used instead of the word *dower*, we think it would have been clearly sufficient to pass her estate. It is manifest that by the word *dower* she meant her *interest* or her remainder in the land attempted to be conveyed by the husband. It has been held in this State, that where a wife made a deed of lands owned in her right, making no mention of the husband in the deed, he and she having both signed, sealed, and ackowledged the same, it passed the interest of both. *Elliot* v. *Sleeper*, 2 N. H. Rep. 525. That it is not necessary for them to unite in the same words of conveyance, see *Gordon* v. *Haywood*, 2 N. H. Rep. 402. Mrs. Bryant's not having acknowledged the deed, does not avoid or injure it as against the tenant who claims under her or her husband through any other title. *Montgomery* v. *Dorion*, 6 N. H. Rep. 250. But however this may be as between Flagg and Mrs. Bryant, we contend that the deed from Flagg to Bean does convey and warrant to Bean half the Dame lot in fee, and that it entitles Bean to the land, if Flagg owned it, and if not, then to an equivalent in damages from Flagg for breach of warranty, &c.

2d. The plaintiff's evidence tended to show, and did show, as we think, that the sum paid by Bean to Flagg for the deed of September 3, 1849, was but $100, and that the whole demanded premises were by the parties estimated at $200. The court's charge tended too strongly to show that what was conveyed by the deed was but about one half in value of the whole premises, and that the deed was in fact but of that value to the tenant. This view was highly unfavorable and injurious to the demandant, as to the main question of fraud, which was submitted to the jury, leading them to understand that what he got by the deed was about equal in value to what he paid; which certainly was not the case when the demandant's warranty was taken into the account. And the omission to mention this to the jury, in connexion with the other suggestions made to them as to the value of

the deed, or of what passed by it, was also injurious to the demandant in this behalf.

II. Our second answer to the defence is, if it be found that the deed of the demandant was fairly obtained, that said deed does not, upon fair and legal construction, convey the whole tract of land therein bounded and described, as the tenant contends it does; but only such parts thereof as purport to have been conveyed to the demandant by the deed of Bryant and wife, the deed of Ann Pinkham, and the deed of Levi Bean, all of which cover but 16 acres of the 20 acres demanded: to wit, the Ann Pinkham deed 5 acres, the Bryant deed $7\frac{1}{8}$ acres, and the Levi Bean deed $3\frac{1}{2}$ acres, and $\frac{1}{2}$ of $\frac{3}{4}$ of an acre, in all 16 acres, leaving 4 of the 20 acres demanded, to which the plaintiff shows title, and to which the tenant has no right. For these 4 acres, at all events, the demandant, was entitled to a verdict upon the evidence before the jury. Yet the court charged the jury, among other things, that if they found that the deed of Flagg to Bean was not falsely and fraudulently read, their verdict should be for the defendant.

This part of the charge was certainly erroneous, and the general verdict for the defendant, found in pursuance thereof, is also erroneous, and should be set aside.

That the following clauses in the deed of the demandant to the tenant, to wit, " meaning to convey all the land I purchased of Levi Bean, S. D. Bryant, and Ann Pinkham, reference being had to their deeds for further particulars," &c., as in the case, and the concluding clause of the description, viz: " meaning to convey all the land set forth in those deeds and *no more,*" do limit the previous general description of the premises conveyed, to what the three deeds referred to purport to convey to the demandant, seems too clear to require any support from authorities, especially when we observe and consider the negative and concluding clause, " *and no more.*" *Barnard* v. *Martin,* 5 N. H. Rep. 536;

*Smith* v. *Strong*, 14 Pick. 128; *Woodman* v. *Lane*, 7 N. H. Rep. 241; *White* v. *Gray*, 9 N. H. Rep. 126.

Again, if the premises conveyed by said deeds are not legally thus limited, then the charge of the court thus limiting it was wrong and *injurious* to the demandant, on the question of fraud in obtaining said deed.

*Kimball* and *Soule*, for the tenant.

The clause in the demandant's declaration, " said parcel of land being the same conveyed to the plaintiff by Silas D. Bryant, by deed dated on the 1st day of October, 1844, by said Levi Bean, by his deed dated the 4th day of April, 1845, and by Ann Pinkham, by her deed dated the 4th day of March, 1847," is a material part of his declaration, limiting and defining the claim the demandant makes against the tenant and the disseizin alleged. He could, under this declaration, recover no other estate than is specified in the three deeds above named. The demandant puts these three deeds to the jury to prove his title, and when the deed of the demandant to the tenant, dated September 3, 1849, and under which the tenant claims, is compared with these three deeds, it is clear that it purported to convey the same estate to the tenant that the demandant was seized of by virtue of those three deeds and no other. This is admitted by the demandant, in the close of his brief, to be the effect of the deed of Flagg to Bean. If this be the meaning of the latter deed, it certainly must be the meaning of the declaration, and the demandant in this action could recover for no other disseizin or ouster than was effected on some estate conveyed to Flagg by some one or all of said three deeds.

II. The construction and effect of the deed of Silas D. Bryant and wife to the demandant were, as was charged by the court to the jury, " to convey to Flagg, the demandant, an estate for the life of Silas D. Bryant." No authority or reason of law can be found to sustain the position that the fee of Bryant's wife passed by that deed; and the effect of

Flagg's warranty in his deed of September 3, 1849, so far as it bears upon the estate Flagg derived from Bryant and wife, is limited to just the estate they conveyed to Flagg.

III. The question of fraud being settled against the demandant, he claims to recover an estate for his own life in one half of the Pinkham house lot, equal to ⅜ of an acre, and an estate for his own life in 3⅝ acres in the Dame lot, both these estates being in common and undivided with the tenant, and being 4 acres in the whole. This estate he holds as tenant by the courtesy, deriving it through his late wife, Lydia Pinkham. He cannot recover this for two reasons:

1st. His declaration claims no estate but what was conveyed by the deeds of Bryant, Bean, and Ann Pinkham.

2d. There was no evidence to show that the tenant ever disseized the plaintiff of this estate. The tenant held an estate, conveyed to him by the demandant, by his deed of September 3, 1849, in the same land in which the plaintiff had the tenancy by the courtesy and had possession, but he had done no act to oust Flagg. *Odiorne* v. *Lyford*, 9 N. H. Rep. 502.

BELL, J. The deed from Flagg to Bean described the premises conveyed as " *three certain pieces or parcels of land situate*, &c., *bounded S. E. by Bean's land and the cove, N. E. by Cochecho river, W. by Bean's land, land of Boyle and of Hurd, and the road;*" and it then adds, " *meaning to convey all the land I purchased of S. D. Bryant, L. Bean and A. Pinkham, referring to their deeds for particulars;*" and again adding, " *meaning to convey all the land set forth in said deeds, and no more.*" The plaintiff contended that this deed conveyed to Bean the land *described* in the three deeds referred to, while the court instructed the jury that it conveyed to Bean only what those three deeds *conveyed* to Flagg. It is of course to be kept in mind that the only question presented to the jury was, whether this deed was

procured by the defendant, by a fraud practised upon the plaintiff, by falsely reading to him the deed as conveying one undivided half of the land, when the deed had no such language. The court was presenting to the jury the actual state of the title of Flagg to the land, and the operation of the deed upon that interest, as ground for the jury to judge whether there was a fraud on the part of the defendant, or only very great ignorance on both sides, as to the actual situation of a very complicated title, and as to the effect of the deed upon it; from which they might infer, that the deed was made in its present form merely by a gross blunder. The question, of course, was, what does this deed in fact convey? The language would convey a fee-simple in all the land comprised within the boundaries set out in the deed, unless its meaning is limited to the land conveyed to the grantor in the three deeds referred to, by the clause, " *meaning to convey*," &c. This expression is twice used, and if the language following this phrase in those instances was found in separate deeds, it would hardly be understood to convey the same meaning. In the first instance it is, " *meaning to convey all the land I purchased by deeds*," &c., and in the second, " *meaning to convey all the land set forth in said deeds, and no more.*" But the whole deed is to be construed together; and it seems to us to be equivalent to the expression, " meaning to convey all the land I purchased of B., &c., set forth in their deeds, to which reference is made for particulars," &c.; and such an expression would be limited to the land actually acquired or obtained of those persons by purchase. If the last of the expressions only, was used, " *meaning to convey all the land set forth in those deeds*," &c., it would not be easy to contend that it was not the intention to convey a fee-simple in all the lands described, if it were not that two of the deeds referred to describe " *one undivided half*" of the land, whose boundaries are set forth; and it seems very clear that a deed which describes an entire tract of land by its boundaries, and then

adds, meaning to convey all the land set forth in such a deed, and no more, must be limited to one half of the land described, if that deed, upon referring to it, conveys an undivided half merely. But taking the two expressions together, we think the opinion expressed by the court below, that nothing passed by Flagg's deed to Bean but the estate which he acquired by the deeds referred to, is correct.

Flagg had an estate in three and five-eighths acres of the lands embraced in the boundaries given in this deed, as tenant by the courtesy of his late wife, and of which his daughter was seized of the reversion, and this is set forth, that is, described, in the deed of Bryant to Flagg, and yet there could not be the slightest pretence for considering it as included in Flagg's deed to Bean, because this land, though *set forth* in Bryant's deed, was not purchased of him.

The general principle, that " in a conveyance of land by deed, a general description of the premises conveyed may be limited and restrained by a particular description," is well settled in the case of *Barnard* v. *Martin*, 5 N. H. Rep. 536, where it was held that a deed conveying " my homestead farm in B., that I now live on and improve, it being the same land conveyed to me and J. M. by C. B., by his deed of December 2d, 1816, said J. M.'s half of which he conveyed to me, by his deed of December 19th, 1825," did not convey a parcel of adjoining land, conveyed to the grantor by C. B. in 1819, though occupied with the other as one farm. Though the general description, if it stood alone, might be sufficient to pass the premises, yet when the grantor, by reference to his deeds, has declared what he intended by his homestead farm, the general description is restricted. The question decided in this case was carefully reëxamined and affirmed in the case of *Woodman* v. *Lane*, 7 N. H. Rep. 241, where it was held that a deed, describing the premises conveyed as " my homestead farm in S., and is the same land conveyed to me by G. W. and R. W.," giving the dates and place of record of those deeds, and

referring to them for a more particular description, did not include another tract purchased of R. S., though occupied for fifteen years, with the other tracts, as part of one farm. In neither of these cases is the language any more clear or explicit than it is in the present case; and the principle there established, we think, must limit the general description in Flagg's deed to Bean, to the undivided half *set forth* in two of the deeds, and to the particular interest purchased by the deed of Bryant. *Jackson* v. *Stevens*, 16 Johns. 114.

II. The only interest which S. D. Bryant had in the land, which he undertook to convey to Flagg, was an estate for his own life, as tenant by the courtesy of his wife's land. He attempted to convey in fee. His conveyance was a valid transfer of his own interest, and of nothing more. His wife, by joining him in the conveyance, using proper and suitable language to pass her interest, agreeably to the decisions in Massachusetts, might have passed her interest, and their joint conveyance would have made an effectual transfer of the fee. *Bruce* v. *Wood*, 1 Met. 542, and cases there cited. See 2 N. H. Rep. 547.

If the opinion of *Woodbury*, J., in *Elliot* v. *Sleeper*, 2 N. H. Rep. 525, that whoever signs, seals and delivers a written instrument, shall be bound by the promises contained in it, and by the same reason, by any grant or agreement to which he might make himself a party, should even be adopted as to persons not under any disability, there would seem to be good reasons against extending the principle to the case of married women. The principle, understood to be settled by the usage and custom of this part of the country, has never, we believe, been understood to go further than this, that " a husband and wife must so far join, in order to make a valid conveyance of her estate, as to convey at the same time, on the same paper, and both in language suitable to pass the title of real estate." 2 N. H. Rep. 527.

Here the husband and wife join in the conveyance, but

neither uses any proper language to convey their interest. The husband conveys and warrants a fee-simple, when he had but a life-estate. His deed is effectual to convey all the interest he had, and nothing more. His wife released her right of dower only, when she had no such interest. As to that, her conveyance is simply inoperative. It would be against every principle of construction to presume a release of any different interest from that expressed. Their deed then gave to Flagg the husband's life estate, and nothing more. *Melvin* v. *Proprs. of Locks, &c.*, 16 Pick. 137; *Raymond* v. *Holden*, 2 Cush. 264; *Payne* v. *Parker*, 1 Fairf. 178; *Powell* v. *Munson*, 3 Mason, 348; *Mayo* v. *Feaster*, 2 Mc. C. Ch. 137; *Purcell* v. *Goshorn*, 17 Ohio, 105; *Bank* v. *Rice*, 4 How. U. S. 225; *Foster* v. *Dennison*, 9 Ham. 121; and see *Lithgow* v. *Kavanah*, 9 Mass. 164; *Bruce* v. *Wood*, 1 Met. 542; *Luffkin* v. *Curtis*, 13 Mass. 223; *Catlin* v. *Ware*, 9 Mass. 218.

It was not necessary for the court to make any remark in relation to the covenants of warranty in the deed of Bryant, nor does it seem in any way called for. It was a matter entirely irrelevant to the issue to be tried, and had no bearing upon the suggestions which were made to the jury relative to the question of fraud, growing out of the seeming gross ignorance of the parties relative to the actual state of the title, and to the effect of the deed. It was not the purpose of the court to show that the conveyance did not include more than half the property, for that could in no way alter the matter, if the deed was fraudulently read, as the plaintiff alleged; but it was to state the facts to enable the jury to decide whether the deed was so written by fraud or by mistake. The issue presented to the jury was, whether the deed was falsely and fraudulently read by the defendant, and its execution unduly obtained by means of that fraud. No other question was raised; and the jury were instructed, that if the plaintiff had failed to make out this point, they should find their verdict for the defendant. It was supposed

the exception taken to this instruction might be founded upon the idea, that if the deed was executed through mistake of the parties as to the state of the title, and the legal effect of the conveyance, without any fraud, it might be held inoperative and void. In equity this might be so. A court of equity may either set aside the deed, or correct the mistake in such a case. The remedy there is suitable and effectual to do justice to all parties. At law it is otherwise, and it cannot be regarded as desirable that courts of law should interfere with conveyances on this ground.

It seems, however, that the exception is taken upon the reason, that the plaintiff conceives he is entitled to a verdict for four acres of the demanded premises, which were not included in the defendant's deed, and to which the defendant did not pretend to set up any title. There would be no foundation for this idea if the language of the declaration should receive the same construction as that of the deed. At the trial it probably did not occur to either of the parties that the result of the action might affect the title to that part of the land, and the attention of the jury was not drawn to this point, either by the court or by the counsel.

It is now insisted that a different rule is to be applied in construing the declaration, from that we have adopted in relation to the deed. The general description of the demanded premises is not to be limited, it is said, by the reference to the deeds for a particular description. The description is complete and perfect in itself, and it is immaterial whether this land or any part of it was conveyed to the plaintiff by Bryant, Bean or Pinkham. The entire allegation may be regarded as mere surplusage, which may be struck out without in any way impairing the cause of action, and which it is therefore unnecessary to prove. There can be no exception taken on account of variance, as to any such redundant allegations, whether the proof supports the statement or not.

The principle, adopted by the courts in relation to the

description of the demanded premises in real actions, is thus stated by *Wilde*, J., in *Atwood* v. *Atwood*, 22 Pick. 287. " In the description of the land, reference is had to a deed, and unless the description can be aided by that reference, it is not sufficiently definite and certain; and it is very clear that it cannot be thus aided. Such a reference would be good in a conveyance of the land, or in a demand of dower before action brought. But when lands are demanded, the description of them must be so certain that seizin may be delivered by the sheriff, without reference to any description of them dehors the writ. It is not necessary in every case to describe the land demanded by metes and bounds, but there must be a certain description in the writ itself, and no defect can be cured by a reference to any existing conveyance." Stearns, R. A. 151; *Bindover* v. *Sindercombe*, 2 Ld. Ray. 1270; *Miller* v. *Miller*, 16 Pick. 215; Com. Dig. Pleader, 2. y. 2. The reference to a deed, which is not permitted to aid a defective description, cannot be permitted either to extend or restrict the effect of a description which is complete and perfect in itself. It is therefore entirely immaterial, and may be disregarded. Upon the original count, then, as there was no defence attempted as to the land not included in Flagg's deed to Bean, the plaintiff was entitled to recover; and the jury should have been so instructed.

During the trial, and when it appeared that the plaintiff's title to a part of the premises was in fee, and to a part only a freehold estate, it was suggested that separate counts were necessary, and it was agreed that the plaintiff might so amend his writ, and the trial proceeded, as if it had been done. This suggestion was well founded. The rule is thus laid down in Stearns on Real Actions, 153. In writs of entry, the seizin of the demandant, or of him under or after whom he claims, must be correctly stated. If the demandant complains of a disseizin to himself or his ancestor, he must expressly allege a corresponding seizin. Thus where

he demands the inheritance upon his own seizin, he must allege that he was seized of the demanded premises, of the said messuage, or of the lands and tenements aforesaid, with the appurtenances, in his *demesne as of fee,* and where he claims only *an estate for life,* the averment should be, that he was seized in his *demesne as of freehold.* The same principle is laid down in Booth on Real Actions, 177, Fitzh. N. B. 443, and note, and Dyer, 101.

The amendments then being necessary, and the parties having agreed they should be made, they are to be considered as if made. If the new counts had been drawn, as they almost necessarily must have been, cutting the premises into separate parcels, it would have appeared that a part of the plaintiff's claim was for lands in which Bean claimed no title, and it may fairly be presumed, he would have disclaimed; and thus the present question would have been avoided. As no change was made or asked in the pleadings, if the court would not have restricted the plaintiff in filing new counts to the land conveyed to Flagg, by Bryant, Bean and Pinkham, the case would have stood as it does on the original count. As to this point we cannot undertake to say what rule might have been adopted by the court of common pleas, in the exercise of their discretion; and must therefore hold it doubtful, at least, whether the amended counts would not have covered the whole twenty acres, in which case the verdict should have been for the demandant for four acres.

For this reason, we think the verdict must be set aside, and when the parties have amended their pleadings, there must be

*A new trial.*