MARCH 13,
1875.            KENNISTON v. HANNAFORD.

To disprove the plaintiff's seizin, the defendant in a writ of entry may show title to the demanded premises in a third person.

WRIT OF ENTRY, dated August 20, 1872, for an undivided half of a strip of land eight inches wide and about one hundred and twenty feet long, extending easterly from Elm street to Church street, in Manchester. The north line of the strip is described in the declaration as '" beginning on the north side of the wall, at the north-west corner of the Johnson block, so called, thence by the north side of said wall, at right angles with Elm street, to the north-east corner of said block."

Pleas, *nul disseizin* as to parcel of the demanded premises, north of a line commencing in the easterly line of Elm street, four inches southerly from the bound or starting-point mentioned in the writ, "thence easterly by a line at right angles with the easterly line of Elm street forty-two feet, thence northerly by a line parallel with the easterly line of Elm street four inches, thence easterly by a line at right angles with the easterly line of Elm street to Church street;" and *non tenure* as to the residue. The strip eight inches wide is mostly or wholly covered by an eight inch brick wall. The wall is near the line between the parties. The plaintiff claims the whole of the wall. The defendant claims the north half of forty-two feet of the west end of it. The wall was built in 1846 by J. W. Worthen and others, as the north wall of a bakery and stable. Since that time buildings have been built against it on the north side a portion of the way.

THE PLAINTIFF'S TITLE. (1) April 2, 1845, Amoskeag Manufacturing Company to Hunt and French, all the land between Lowell and Washington and Elm and Church streets. (2) Sept. 2, 1845, Hunt and French to Jacob W. Worthen, Hiram Brown, Thomas Stimpson, and Isaac Floyd, Jr., a parcel of land " beginning on Elm street northerly from the corner of Elm and Lowell streets, fifty-six feet and one twelfth ; thence running easterly at right angles with Elm street one hundred and fifteen feet and eight inches to Church street; thence northerly on Church street twenty-five feet ; thence easterly, on a line parallel with the southerly boundary to Elm street, one hundred and nineteen feet and five inches; thence southerly on Elm street twenty-five feet to the bound begun at,—containing twenty-nine hundred and forty and three eighths square feet." (3) January 25, 1847, mortgage. Merrill to Hiram Brown of one undivided third, etc., " the same property this day deeded to me by said Brown." Mortgage discharged by W. H. Farnum, May 31, 1852. (4) July 19, 1849, Merrill to B. G. Mathews, one undivided third of same premises. (5) December 27, 1850, Stimpson and Floyd to Mathews, one undivided twelfth, limited to give him, with Hunt and French's deed, one undivided third. (6) April 26, 1872, Mathews to H. Chandler, one undivided third of the same premises described, so as not to include the strip four inches by forty-two feet. (7) April 29, 1852, Stimpson and Floyd to Farnum, one undivided twelfth, excepting and reserving the four-inch strip. (8) December 26, 1850, sheriff's deed to Farnum of Worthen's equity of redeeming one undivided fourth, and copy of judgment and levy against Worthen. (9) May 27, 1863, Stimpson and Floyd to the plaintiff and C. W. Johnson of an undivided third, " reserving out of the above described premises a piece of land conveyed by us and others to Joseph Hall," being the four-inch strip. (10) May 29, 1863, Chandler and Farnum to the plaintiff and C. W. Johnson, two undivided thirds, " reserving out of the above bounded premises a piece of land conveyed by us and others to one Joseph Hall," being the four-inch strip. In the deeds subsequent to that of Hunt and French to Worthen and others, with the exception of the

deed of Mathews to Chandler, the description of the whole lot is the same as in Hunt and French's deed, and reference is made to that deed. (11) December 31, 1851, Stimpson, Floyd, Mathews, and Farnum to J. B. Hall, of the strip four inches by forty-two feet, described as follows: "Beginning at the south-west corner of the lot of land which the said Hall purchased of Harry Leeds and Christopher G. Hoyt upon Elm street; thence running by the south line of said lot forty-two feet; thence southerly parallel with Elm street four inches; thence westerly parallel with the south line of said Hall lot (the line first described) to Elm street forty-two feet; thence northerly by Elm street four inches to the first bound, with the brick wall upon the same." Recorded February 28, 1852. (12) To show the starting-point of the last deed, September 16, 1850, Leeds to J. B. Hall, Hoyt to J. B. Hall, each of an undivided half of two lots. (13) October 16, 1871, Hall to plaintiff and Davis, in which he "remised, released, and forever quitclaimed to the plaintiff and Davis, and their heirs, a certain strip of land (being the same four-inch strip) 'being all and the same strip of land conveyed to said Hall by Thomas Stimpson, Isaac Floyd, Benjamin G. Mathews, and William Farnum, by deed dated December 31, 1851, and recorded vol. 271, page 198.' To have and to hold the said premises to the said Davis and Kenniston, and their heirs, forever, etc., with a covenant to warrant and defend the said premises to them and their heirs against the lawful claims and demands of any person or persons claiming by, from, or under me."

It was admitted that Kenniston and Davis have been in possession of the Johnson block by their tenants since the date of this deed. The plaintiff showed no actual seizin of the four-inch strip other than the general occupation of the block.

THE DEFENDANT'S TITLE. (1) March 30, 1846, Hunt and French to Smith and Barnes, of lot of land, bounded "northerly on land this day conveyed by us to Alonzo Smith and William McPherson, southerly on land of J. W. Worthen & Co. one hundred and twenty feet." (2) June 24, 1846, Smith and Barnes to Leeds and Hoyt, bounded "northerly on land this day conveyed to said Leeds and Hoyt by Alonzo Smith and William McPherson, southerly on land of J. W. Worthen & Co. one hundred and twenty feet, with the buildings thereon." (3) September 16, 1850, Hoyt to Hall. Leeds to Hall, each an undivided half of two parcels of land, the southerly one being described "southerly on land now or formerly of J. W. Worthen & Co. one hundred and twenty feet, with the buildings thereon: said granted premises being the same described in two certain deeds,—one from Alonzo Smith and William McPherson to said Leeds and Hoyt, recorded Hillsborough records, vol. 237, page 441, and the other from said Smith and Josiah M. Barnes to said Leeds and Hoyt, recorded vol. 257, page 440. (4) September 5, 1853, Hall to W. P. Riddle, the same lots, bounded "southerly on land now or formerly owned by J. W. Worthen & Co. one hundred and twenty feet, with all the buildings thereon: said granted premises being the same described in two deeds to said

Hall,—one .from Harry Leeds, dated Sept. 16, 1850, recorded in the Hillsborough registry, vol. 263, p. 265, and the other from Christopher G. Hoyt, dated Sept. 16, 1850, recorded in the Hillsborough registry, vol. 263, page 321." (5) April 6, 1866, W. P. Riddle to Geo. W. Riddle the same two lots, bounded " southerly on land now or formerly owned by J. W. Worthen & Co. one hundred and twenty feet, being the same premises conveyed to me by Joseph B. Hall by deed dated," etc. (6) December 28, 1866, G. W. Riddle to the defendant, the same lots described as in last deed. In the deeds of these two lots, each is described as measuring eighteen and three fourths feet, both on Elm and Church streets. In order to show that J. B. Hall had no title to the four-inch strip at the date of his deed in October 16, 1871, and to rebut the plaintiff's seizin of that strip, the defendant put in evidence, subject to the plaintiff's exception, a deed from J. B. Hall to Reuben P. Hall of that four-inch strip, dated September 16, 1859. The following evidence was introduced by the plaintiff—the laying out of Elm and Lowell streets in 1840 :

*S. W. Parsons* testified : In 1845 I did the wood-work of the bakery then built on the plaintiff's lot, and was overseer of the brick-work. It is my impression that there were hubs around the lot, by which I located the building. The wall now in controversy was then built, without any objection being made that I know of to its location. I endeavored to locate the building correctly. The bakery was the first building on either lot. I can't say but there might have been at that time on Church street a building upon what is now the defendant's lot. I find it, by measurement this morning, to be eighty-one feet and three inches from the north-west corner of the Johnson block to the south-west corner of the City hotel, and that Lowell street is forty-nine feet and four inches between the buildings. I had no knowledge of any stone posts in Elm street. The Tremont house on the defendant's lot was built three or four years after the bakery,—but am not positive as to the time,—and the timbers were put into the brick wall of the bakery. I worked on both, and heard no objection to their being put in, and no suggestion that the owners of the bakery had got over the line. I was working there on the Tremont house at the time. There was then a wooden building on the back end of the Tremont house lot.

*David E. Hill.* I occupied a part of the plaintiff's building. The defendant in 1871 extended the Tremont house back beyond some windows on the north side of the plaintiff's building, and bricked them up,—seven of them I think,—bricked them up in the wall outside of the window frames. Some bricks in the south side of the plaintiff's wall started and loosened, where I suppose the defendant put timbers of his extension in' the wall.

*Hylas Dickey's* deposition. Worked on the brick wall when bakery built on the plaintiff's lot in the spring of 1846. Int. 16 omitted.

*Benjamin G. Mathews.* I executed deed to Hall of the four-inch strip. The agreement to sell that strip to Hall was about the time Hall built the Tremont house. Think he did not insert his timbers in.

the brick wall till he bought the four inches. The firm of Worthen & Co. was dissolved before date of deed of the four inches to Hall, and before the sheriff's sale of Worthen's equity. Worthen & Co. were in the bakery business. Think Farnum was not interested in the bakery business. Think no baking there after I acquired an interest. Baking there by Nash after I bought, but none by Worthen & Co. Hall made no claim or suggestion that our building was over the line.

*Hiram Brown.* Was one of the firm of Worthen & Co. When we bought, our lot was staked out. Think the other lots were staked out. Hubs three by four inches square driven down at the corners. When we built the bakery there was no building on defendant's lot. The city hotel on the lot south of ours was built the same season. We endeavored to locate and build wholly on our own land, and supposed we had. There was no suggestion or complaint that we were building over. Hunt and French lived here. I sold to Merrill and took back a mortgage : he went to Maryland, and is dead. I had no knowledge of any stone posts at corners, or at corners of streets. Upon cross-examination he said,—Hunt, French, Barnes, and Smith are all dead. We didn't intend to build over the line. If we did build over, I did not intend to claim beyond the line. We calculated to build on a straight line, and supposed we had. We had nothing to indicate where the line was except the hubs.

*J. J. Bennett.* In 1871 saw some bricks out of the south side of the wall ; saw the ends of one or two floor timbers of the defendant's extension where they appeared to have pushed bricks out ; could not say floor timbers run through the wall; should say they came more than half way through,—not more than five and one half inches into the wall. The defendant's motion for a nonsuit was *pro forma* overruled, subject to exception. The defendant introduced the following parol evidence.

*Daniel L. Stevens.* Hall built the Tremont house in 1849. Worthen & Co. included Brown and others, and were bakers.

*George H. Allen* testified, subject to exception, to certain measurements, that by running a line at right angles with the centre line of Elm street (as shown by two stone posts), at the distance called for by the deed from Hunt and French to Worthen and others, it touches the north-west corner of the Johnson block at the point of beginning named in the writ, and produced in the same direction to Church street ; east it intersects the west line of Church street at a point three inches south of the north-east corner of the Johnson block ; that at a point about sixty-four feet east of Elm street, being the easterly end of Hannaford's new part, built in 1871, the line is five and a half inches south of the north face of the Johnson block ; that this line is not at right angles with the front of the Johnson block ; that he has been engaged as civil engineer in Manchester five years; only knows by information and the records how and when the stone posts were set; that such stones as are set at the intersection of the other streets are from four to six feet in length, the top being set deep enough to be

below the action of frost; that in the top of each post is drilled a hole about a half inch in diameter; that measurements are made from the centre of the hole; that he has made measurements from such posts in other parts of the city, and found the posts correctly set; that at Lowell street, Elm street continued north bends to the west, making an obtuse angle at that point, and that the stone set at that point is at the angle made by the intersections of the centre lines of the two part of Elm street which form this obtuse angle, but is south of the cen line of Lowell street; that he drew a base line from the centre of hole in the post at the corner of Elm and Lowell streets to the ce of the hole in the post at the corner of Elm and Bridge streets, a measuring upon and from this base line, the north wall of the Johnso block is not at right angles with this base line, but is built on a curved line from Elm to Church street. The evidence was given, subject to the exception that there was no competent evidence that these stones were proper monuments to measure from.

. *J. N. Hannaford,* defendant. In 1871 I extended Tremont house about twenty or twenty-two feet east of the forty-two feet. Laid up one tier of brick in the windows in the eight inch wall, when I built extension, smooth with the north side of the wall, without disturbing the windows. Put ends of timbers for one floor into the wall for second story floor. Timbers about sixteen inches apart. Intended to enter them four inches. I supposed I had a right to enter them. Have cut off the timbers at the wall, and supported them in another way, on advice of counsel. I cut off the timbers in 1872, think later in the season than August 20. The south end of my building on the east end of my lot (next Church street) is supported on this wall.

The north line of the demanded premises, as shown on the defendant's plan is a b c. The defendant pleads *nul disseizin* as to all north of the line A B C D, and *non tenure* as to all south of said line. The piece represented by A B C a, south of the disputed line, is, as the defendant claims, the strip forty-two feet by four inches conveyed to hall December 31, 1851.

The court *pro forma* ordered a verdict for the plaintiff on the issue of tenure, and for the defendant on the general issue, and both parties excepted. All papers used at the trial may be referred to as a part of this case. The court in ordering a verdict intended to raise two questions, for the decision of which the foregoing statement of the evidence, inserted at the request of counsel, seemed to the court unnecessarily extensive and minute. The court understood the real controversy as to title to be, whether, by possession, and the deed of the defendant's lot from Hall to Riddle, September 5, 1853, bounding " southerly on land now or formerly owned by J. W. Worthen & Co.," the defendant owns the strip forty-two feet long and four inches wide, being the north half of forty-two feet of the west end of the wall, and the land covered thereby; and that the most important if not the only question was (supposing J. W. Worthen & Co. formerly owned that strip as well as the adjoining land south of it), whether that strip (conveyed

to Hall by itself, and severed from the land south of it, and excepted out of conveyances of the land from which it was severed) passed by the deed from Hall to Riddle.

E.

DEFENDANT'S PLAN.

W.

The second question was, whether the defendant, having built his addition into that part of the wall east of said strip, and stopped up the windows with brick inserted in the wall, under a claim of title as he testified, and not having sawed off the timbers till after the commencement of this suit, could maintain his plea of *non tenure* as to the land covered by the part of the wall which he had dealt with in that manner.

The real controversy being in relation to the wall and the land cov-

ered by it, and the wall not being exactly straight, nor exactly at right angles with Elm street as built upon—although the pleadings on both sides treat of straight lines running at right angles with Elm street—the court was of opinion that the pleadings ought to be amended, without terms, so as to set forth the actual controversy; and that no time ought to be spent in a contention about straight lines and right angles, when no such contention exists except in the pleadings.

*Charles R. Morrison* and *Little*, for the plaintiff.

*S. N. Bell*, for the defendant.

*LADD, J. If the real matter in controversy between these parties is the ownership of the strip of land forty-two feet long by four inches wide, covered by the north half of the north wall of the Johnson block, at the west end, as stated in the case, they have apparently succeeded to an extraordinary degree in avoiding the settlement of that controversy by the trial already had.

The plaintiff in his writ demands an undivided half of a strip eight inches in width, extending from Elm street to Church street, the northerly line of which is the north line of the Johnson block,—this line being also described as running at right angles to Elm street. The defendant pleads *nul disseizin* as to that portion of the demanded premises north of a line described as commencing four inches south of the northwest corner of the Johnson block; thence running forty-two feet at right angles to Elm street; thence north four inches parallel with Elm street; thence east, at right angles to Elm street, to Church street; and *non tenure* as to the rest.

I think it cannot be said but that upon the face of the record both of these descriptions are well enough. It would perhaps have saved some trouble and expense to the parties if the defendant had in the outset marked the line to which he claimed on the ground by visible monuments, and then described it in his plea by such monuments; but a right angle, erected at a given point upon a given line, certainly locates a line with mathematical precision, the only condition being that the line adopted as a base shall be precisely located. If the line of Elm street is located on the ground with mathematical certainty, a line making a right angle with that street on the east side, and starting from a given point, is also located with mathematical certainty. So the plea could not be rejected, or held bad upon demurrer.

If there is a dispute as to the direction of the line of Elm street, the settlement of that dispute determines the location of a line perpendicular to that street.

The evidence reported, and the defendant's diagram annexed to the case, show that the defendant claimed that the line, described in his plea as running at right angles to Elm street, ran in a different direction from the line described in the writ, as making a right angle with the same

---

* SMITH, J., having been of counsel, did not sit.

street at the same point. That is, he claimed that, starting four inches south of the north-west corner of the Johnson block and running forty-two feet at right angles to Elm street, then making an offset of four inches to the north and continuing still at right angles to Elm street, the line comes out on Church street three inches south of the north-east corner of the block, that is, of the east end of the line which is described in the writ as making a right angle with Elm street. But the plaintiff has described his north line by a visible monument on the ground, namely, the northerly line of the Johnson block; and by this he is bound, and must stand or fall at the trial.

If at the trial, as seems to have been the case, the defendant fixed the location of the line to which he claimed in the position indicated on his plan, then, most obviously, there was a controversy between the parties, not only as to the four-inch strip, but also as to the long strip three inches wide on Church street, five and a half inches wide near the middle, and running to a point on Elm street.

A verdict was ordered for the defendant on his plea of *nul disseizin.* Now, one of two things certainly follows : either the verdict settles the defendant's right to this strip, which would be the case if the line described in the plea is located on the ground as laid down in the plan ; or it settles nothing at all with reference to this strip, which would be the case provided it was not ascertained at the trial where the line described in the plea is located on the ground. If we take the latter view, then the case manifestly must go back for the trial of this question, before any practical result can be reached. But if the former view be taken, then the question is, Was there evidence to be submitted to the jury tending to show that the line was in a different place from that claimed by the defendant ?—and I think there was. But suppose there were not; or, suppose the question as to the true location, on the ground of a line making a right angle with Elm street, had been submitted to the jury, and they had found upon it in favor of the defendant, there still comes another question, which I clearly think ought to have been sent to the jury, and that is, whether there had been such adverse occupation of the premises between 1845, when the bakery was built, and the date of the writ, August 20, 1872, as to make a good title to this strip in the plaintiff;—and I am of opinion that there was such evidence. It is true, Brown testified that if the firm of Worthen & Co., of which he was a member when they built the bakery, built over the line, *he* did not intend to claim beyond the line. But he says they did not intend to go beyond the line with their building; and I think the unequivocal act of erecting a permanent brick building, and occupying it for more than twenty years, is evidence of a claim of ownership of the ground on which it stands, which might properly be considered by the jury in connection with the somewhat equivocal declaration of the witness upon the question of how the firm of Worthen & Co. claimed to occupy the land.

For these reasons I think no judgment can be rendered on this verdict, which will establish the right of the defendant to the long,

narrow, and pointed strip of land lying north of what he claims to be the true line between the two lots, and between that line and the north line of the Johnson block.

It is obvious, from an inspection of the plan, that the verdict on the plea of *non tenure* is affected by the same considerations. It would seem probable that if the defendant should maintain the issue on the plea of *nul disseizin*, and at the same time establish the location of the line described in that plea as claimed at the trial and indicated on his plan, the verdict as to tenure should be the other way,—for the reason that the flooring timbers entered by the defendant in the wall east of the forty-two feet, in that case, may not have extended beyond the line of his own land.

I think the verdict upon the issue presented by both pleas must be set aside, and a new trial granted.

If the real controversy is as to the ownership of the four-inch strip, the parties can consider whether it will not be well to amend their pleadings, in accordance with a suggestion in the case, so as to show it. If that is not the controversy, it will be best at the next trial to have the facts settled upon which their respective rights depend.

I think the deed from J. B. Hall to R. P. Hall, dated September 16, 1859, was admissible to disprove the plaintiff's seizin; and in the view I take, it is immaterial whether the deed of J. B. Hall to the plaintiff was sufficient to give color of title or not. Here was a wall which had furnished support to two adjacent buildings from the time the Tremont house was built to the date of the writ, a period of at least twenty-three years. Assuming the plaintiff's claim as to the location of a line at right angles with Elm street to be correct, one half of it stood on his land and the other half on the strip in controversy. Probably it had become a party wall, at least so far that the proprietor of each building had acquired an easement of support as against the proprietor of the other. If Hall had no seizin at the time of his deed to the plaintiff, that deed, of course, gave the plaintiff no seizin; and, admitting that the deed was sufficient to give color of title, the question would be whether there was such an entry and possession under it as to invest the plaintiff with the actual seizin.

The first inquiry is one of fact, namely, What did the plaintiff do with respect to the premises after the deed?—and if it appeared that he did anything, then would come the question of law whether his acts were sufficient to clothe him with the seizin to the extent of the boundaries set down in his deed. But the case shows that he did nothing, at least nothing more than to continue in the general occupation of the Johnson block. The defendant was also, at the same time, in the general occupation of the Tremont house. Neither tore down the wall between them, nor any part of it. The occupation by each of his own premises was entirely consistent, not only with an easement, but with an absolute title in the other to one half the wall. The occupation by both was the same after as it had been before the deed. There was no entry in fact. The learned counsel for the plaintiff says that " It

would be absurd to say that a man has no possession of the walls of a house that he is living in as owner, where he has color of title to the land which the walls rest upon, as well as the rest of the land covered by the house, whether by one or several deeds." But the trouble with this is, that, so far as regards the matter of title, the plaintiff and defendant stand on an equal footing, that is, neither of them has any title at all ; and so far as regards the matter of possession, there is just as good reason to say that the defendant's occupation of his building must include the land covered by its walls, as there is to say the same thing in favor of the plaintiff. I think the plaintiff's occupation of the block,—no other act of dominion or possession, and no actual entry, being shown,—was entirely insufficient, under the circumstances disclosed by the case, to give him a seizin in fact, such as he must show before he can maintain this action. This condition of his right is shown by the deed from J. B. Hall to R. P. Hall, and therefore that deed was properly admitted in evidence.

As to the testimony of Allen, I think, taken alone, it had no legal tendency to show the mathematical location of a line at right angles to Elm street. In connection with other evidence showing when, how, for what purpose, &c., the stone posts were set in the street, there would seem to be no reason why it should not be received.

CUSHING, C. J. If the doctrine be correctly stated in the cases of *Elliot* v. *Heath*, 6 N. H. 426, *Flagg* v. *Bean*, 25 N. H. 49, 65, *Woodman* v. *Lane*, 7 N. H. 241, and *Mills* v. *Pierce*, 2 N. H. 11, that the same certainty required in the description of the premises in a conveyance of land will be sufficient in a writ of entry, it would follow that the north wall of Johnson's block would be a monument, and would control the given course, so that if the north line of Johnson's block is not at right angles with Elm street, it will still be the true boundary of the land demanded. The land demanded in the writ is just one half of the party wall extending back one hundred and twenty feet. There is no mistake about this, and there is in the declaration no dispute about straight lines and angles, and the demand is of one half of the party wall ; and if it be true that the line described in the defendant's plea does not run parallel with the north line of the party wall, but diverges to the south, then it follows that there is a considerable portion of the east end of the party wall as demanded in the writ which is not disclaimed at all, and the plea of *nul disseizin* as to the west end covers considerably more than the north half.

The evidence tends strongly to show that the person who built Johnson's block built exactly according to his claim. It is true, he says, substantially, he did not intend to claim more than he owned, and that he did not intend to build on what he did not claim. The evidence, taken together, tends to show clearly a practical location of Johnson's block on the lot described in the deed, acquiesced in for more than twenty years, and settling conclusively that the north line of that block is the original dividing line between the lots.

If this be so, the defendant's deeds bounding on the same monument, the courses and distances must be controlled by it, and he cannot make out a title to anything more than the north half of the west end.   The evidence tends to show all this, and of course to show that the defendant has no title to a portion of the land embraced in his plea of *nul disseizin*, and that he has not disclaimed all the land claimed in the writ on the east end.   At the same time the defendant's evidence tends to show otherwise, and that if he makes out his title he maintains his plea of *nul disseizin* as to the portion on which he supported the beams of his extension, and that he has never occupied anything which he disclaims.   There being thus evidence each way on both the pleas, the verdicts which were ordered must be set aside.   I agree, however, with my brother Ladd, that the evidence of Allen should not at another trial be received without further information as to the monuments which he assumed to indicate the lines of the streets.

Foster, C. J., C. C., concurred.

*Verdict set aside.*